[No. 6434.  Decided December 15, 1906.]

SARAH NELSON *et al.*, *Respondents*, v. THE CITY OF SPOKANE, *Appellant*.[1]

MUNICIPAL CORPORATIONS—STREETS—COUNTRY ROADS—DEGREE OF CARE.  As to country roads, formed by travel and not laid out, a city is not required to exercise the same degree of care as in the case of city streets, but need only keep in repair the traveled portion, and is not liable to a traveler who attempts to leave one traveled track and drive onto another about nine feet distant and 18 inches to 2 feet lower, and who is injured by the dangerous condition of the ground which had never been used for a road.

SAME—CONTRIBUTORY NEGLIGENCE.  A traveler in a country road who without necessity attempts to drive from one traveled track into another across ground never used for a road, whereby injuries are sustained by his wife, is guilty of contributory negligence or assumes the risk, precluding any recovery from the city.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered May 17, 1906, upon the verdict of a jury rendered in favor of the plaintiffs, for personal injuries sustained through a defective highway.  Reversed.

*J. M. Geraghty* and *Alex. M. Winston*, for appellant.

*Hamblen, Lund & Gilbert*, for respondents.

DUNBAR, J.—This is an action, brought against appellant by respondents, to recover the sum of $5,000 for personal injuries received by respondent Sarah Nelson, on August 6, 1905, by reason of an alleged defective highway in the city of Spokane.

As we understand the record from the briefs and plats submitted, the place of the accident was within the corporate limits of the city of Spokane, but outside of the settled portion of said city.  Through an eighty-acre tract of land,

[1]Reported in 87 Pac. 1048.

that was unplatted and through which no streets ran, there had been made by travel three roads, starting from the same point of travel on the road from Medical Lake to Spokane, diverging for the space of four or five hundred yards, two of said roads then converging and the other one bearing off in another direction. These roads were made by common travel, and at the place where the accident occurred were about nine feet apart. The evidence is a little conflicting in regard to this, but we conclude from the whole testimony that that was about the distance. One of these roads was higher than the other by from eighteen to twenty-four inches. The respondents, with six other people, in a conveyance or hack drawn by two horses, had traveled over one of these roads on the morning of August 6th, going some distance into the country. Returning that evening after dark, the respondent William Nelson, who was driving the team, undertook to leave the road upon which he was traveling and get into the lower road. In doing so, the wagon was overturned, and the injury for which this action is brought was thereby caused. The appellant, the city of Spokane, demurred to the complaint, and asked for a dismissal of the cause upon the opening statement by the counsel for plaintiffs, and also upon the conclusion of the plaintiffs' testimony. These respective motions were denied. The case went to trial and resulted in a verdict in favor of the plaintiffs.

The action is based upon the negligence of the city in not keeping the road in repair. The answer denied negligence, and set up contributory negligence on the part of the respondents. It is contended by the appellant that there is a different rule of responsibility resting upon municipal corporations in maintaining regular streets than there is in what may be termed "country roads," or roads that have been made by common travel and accepted and used by the municipality; while the contention of the respondents is that the city, having adopted this road and held it out to travelers as a safe

place to travel, will be held to the same rule of responsibility that it will in maintaining its streets in a reasonably safe condition for travel.

Many cases from this court are cited by the respondents to sustain this judgment and the position just outlined. But after examining them, we are forced to the conclusion that they are not in point. While it is true that we have decided that the right of the party injured to obtain redress does not depend upon the technical duty of the city to maintain a street or the technical manner in which it is adopted, we have not decided that the city was bound by the same rule of responsibility in maintaining a street as it would be in maintaining a country road. In fact, it was said by this court, in *Gallagher v. Buckley*, 31 Wash. 380, 72 Pac. 79, that a distinction was drawn between county roads and streets; citing Elliott on Roads and Streets (2d ed.), § 621, to the effect that the general rule appears to be that the duty to keep in repair extends only to the traveled path or portion of the way in actual use, provided it is wide enough to be safe. The author cited makes a distinction between streets and country roads, and approves the doctrine as applied to country roads, but rather disparages it as applied to improved streets of a city. This doctrine was announced in *Monongahela City v. Fischer*, 111 Pa. St. 9, 2 Atl. 87, 56 Am. Rep. 241, where it was decided that a city charter requiring its corporate officers to keep its streets and roads in good condition does not impose upon the municipality the burden of keeping the entire width of its country roads in as safe condition as its streets in the built up portion of the city; citing many cases to sustain the text. This rule is founded on reason. Travelers do not expect the same degree of safety or perfection in roads when traveling through the country as they do when traveling on the streets of a populous city, and therefore naturally exercise more caution in observing the character of the road. The general rule seems

to be that, in the case of a country road, all that is necessary is to keep the traveled portion of the road in repair, and that a city will not be responsible to the traveler who deviates or leaves the traveled portion of the road.

Mr. Thompson, in his Commentaries on the Law of Negligence, § 6008, after commenting upon this subject at large, says:

"For example, a town need not keep all parts of a *country highway*, leading out of a village, though within its limits, in a safe condition for public travel. So, in respect of a *country road* within the territorial limits of a city, if a *portion of the width* of the road is kept in a smooth condition and safe and convenient for travel, the city discharges its duty."

Again, § 6009:

"We may conclude from the foregoing that a city is not ordinarily bound to make repairs, nor to erect barriers, outside the traveled path; but that its duty in this respect is generally accomplished by making and keeping a sufficient breadth of the located road in a condition reasonably smooth and safe for travel. It may deposit on that portion of the highway outside the traveled path, stumps and stones removed from the traveled path, without being liable for damages if a traveler comes in collision with them."

In 2 Thompson, Negligence, page 769, the law is summed up as follows:

"But a better expression of the doctrine is: if a traveler, *without necessity*, or for his own pleasure or convenience, deviates from the traveled track, it being in good condition, and in so doing meets with an accident for some cause outside of such track, the town will not be liable for the resulting damages."

And that is exactly the condition of things in the case at bar. The respondent William Nelson attempted to leave one of these tracks and take another track which he saw below him, and in doing so was overturned by reason of the fact that the land between the two tracks was dangerous to travel

over.  There is no testimony tending to show that the road
he was traveling on was not a safe road if he had pursued it,
nor is there any testimony in this case that this nine foot
strip of land had ever been used by the traveling public or
accepted or recognized in any way as a part of the highway.
It must be borne in mind that this was not a street, but a
highway; that it was not a highway made by the city, but was
just a highway that the traveling public had made by travel-
ing over these respective tracks.  Again, we think, as shown by
the testimony of the respondent, that he was guilty of con-
tributory negligence in leaving the track in which he was
traveling, and which was a safe track if he had remained in
it, to pursue the other track.  There is no conflict in the
proof as to the condition of the road.  It was described by
Mr. Dickey, one of respondents' witnesses and a man who
seemed to be very familiar with the roads, as follows:

"One raises and goes over a little mound and in muddy
weather—in muddy weather we sometimes take this upper
road; but I am over that road every day, and when I come to
this point where these two roads are on a level coming from
out from town, if I see a team ahead of me taking this lower
road, I have to take this upper road; and if I get into this
lower road before the other team comes along, they invari-
ably have to take the upper road, for if we are heavy loaded
it would be a difficult matter to get a team by there."

So that it appears that there were the two distinct roads,
and that there was no such thing as traveling on the land be-
tween the roads; and if the respondent had thought it neces-
sary or desired to change the tracks on which he was traveling,
it was his duty to examine the character of the land between
the two tracks, and if he did not, and for want of the exercise
of such caution, respondent Sarah Nelson was injured, she
cannot complain of the negligence of the city.  The reason as-
signed by respondent for not keeping on the track upon
which he was traveling was that it was dark, and he looked
to the right and could see the road plainly, but in front of

him was a little dust in the road, and he undertook to turn to the right.

There would seem to be no reason why he could not see the road immediately in advance of him as well as he could the road down to the right. Of course, knowing that it was dusty, the mere fact that the dust was kicked up by horses would indicate to any person of ordinary thought or observation that he was in the road, instead of the contrary. In addition to this, one of his witnesses, Mr. Breakfield, and one of his party, testified that he was on horseback one hundred feet behind the wagon, and that he saw it when the driver attempted to turn, saw the wagon slowly careen and turn over; and if the action of the wagon could be seen so clearly as described by this witness at a distance of one hundred feet, it would seem that there was no reason why the driver should not be able to see the road directly in advance of him. He, no doubt, concluded that the road below was probably freer of dust than the road on which he was traveling, and attempted to change roads for the purpose of escaping the dust. In any event, we think, under all the circumstances of this case, that when he did so he made the attempt at his own peril.

The judgment is reversed, and the cause remanded with instructions to dismiss the action.

MOUNT, C. J., HADLEY, FULLERTON, and ROOT, JJ., concur.

RUDKIN and CROW, JJ., took no part.