be implied. It must actually exist and be visible to the eye.

"The court is satisfied from the perusal of these letters that Mr. Lawless never intended to purchase any timber until after the estimate had been made and after he had examined it and found it satisfactory. Certainly he had never agreed in writing to purchase a given thing at a given price or given terms."

There were verbal negotiations between the parties as to the sale of the cypress and gum timber on certain tracts of swamp land. The only written evidence before us, which is binding on the defendant, is contained in the two letters of Lawless. The first letter was in reply to one from Surveyor Kemper, and the solitary admission contained in it refers to an agreement in regard to the measurement of the timber.

The second letter was written to the plaintiff, the opening clause reading, "Your price of $6.50 per M ft. for your timber on Arlington plantation, I think is all right," precludes the supposition of a previous binding agreement as to the price of the cypress timber. It is to be noted that this letter does not refer to the gum timber, and that plaintiff's petition contains no reference to such timber, although his letter to Lawless states that the deal included both cypress and gum.

It is evident that the plaintiff eliminated the gum timber from his demand, because it was not referred to in Lawless' letter to him.

The second letter, taken as a whole, does not bind Lawless either as to the price, or the measurement, but leaves both subject to future adjustment.

It seems to us that the correspondence as a whole suggests merely negotiations for the sale of a large body of cypress and gum timber. Plaintiff offered this timber on certain terms. The parties agreed to have the timber measured and estimated. A sale cannot be predicated on such a preliminary agreement. The judge a quo says:

"Mr. Lawless simply states the agreement be had with reference to *measuring* the timber. In this it seems to the court he was but following a custom common to timber men of this country —to have the timber estimated and then decide whether or not to buy.

"Often the number of trees on a tract of land, its accessibility to pull boats, the size of the trees, and their length are of more importance than the quantity of the wood."

Lawless was the vice president of one of the largest lumber companies in this state, yet he carried on the negotiations in his own name, with the evident intention of buying for his company if a satisfactory agreement could be reached. The correspondence does not show that a sale was consummated.

Judgment affirmed.

PROVOSTY, J., being absent on account of illness, took no part.

———

(64 South. 762.)

No. 19,627.

GOODWYN v. CITY OF SHREVEPORT.

(Jan. 19, 1914.)

*(Syllabus by Editorial Staff.)*

1. MUNICIPAL CORPORATIONS (§ 768*) — DEFECTS IN STREETS — INEQUALITY IN SIDEWALK.

In a city requiring property owners to provide a sidewalk in front of their premises at their sole expense, a difference in level ranging from 2 to 2½ inches, but which, by the accumulation of dirt on the lower sidewalk, had been reduced to an average of 1½ inches, and where the higher sidewalk did not end abruptly, but began 1½ inches from the dividing line, and sloped at an angle of 45 degrees toward the lower sidewalk, was not such an inequality as to make the city guilty of negligence, and liable to one injured by stumbling over it in daylight.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1622, 1624, 1625; Dec. Dig. § 768.*]

2. MUNICIPAL CORPORATIONS (§ 763*)—DEFECT IN STREET—DUTY IN GENERAL.

The duty of municipal corporations is to see that their sidewalks are in reasonably safe condition for persons exercising ordinary care and prudence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1612–1615; Dec. Dig. § 763.*]

Monroe, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; E. W. Sutherlin, Judge.

Action by Mattie A. Goodwyn against the City of Shreveport. Judgment for plaintiff, and defendant appeals. Judgment set aside, and suit dismissed.

J. M. Foster, City Atty., of Shreveport (G. W. Jack, of Shreveport, of counsel), for appellant. Edward P. Mills, of Shreveport, for appellee.

PROVOSTY, J. As plaintiff was walking upon the sidewalk of one of the residence streets of the city of Shreveport in broad daylight her foot struck against an inequality in the sidewalk, and she stumbled and fell, and was seriously hurt; and she brings this suit in damages against the ·city, alleging that, in allowing this inequality to remain in this sidewalk, the city was guilty of negligence. Plaintiff is a trained nurse, 35 years old, and wears glasses.

[1] The inequality resulted from one property owner having made his sidewalk slightly higher than that of his neighbor. This higher sidewalk was of concrete; the one upon which plaintiff was walking was of brick. The difference in level between the two ranged from 2 to 2½ inches. But dirt had accumulated on the top of the bricks, so that the difference between the two levels was so reduced as to range from 1¼ inches to 1⅝ and 2 inches, leaving an average difference of, say, 1½ inches. The higher sidewalk did not end abruptly, but sloped at an angle of 45 degrees towards the lower, beginning 1½ inches from the dividing line, which further mitigated the situation, since this slope was less liable to catch the foot of the pedestrian than would have been a perpendicular obstruction.

The street commissioner of the city testifies that there are a great many inequalities of this kind in the sidewalks of the city of Shreveport. And the same statement we dare say could be made with equal truth of the sidewalks of most cities; at least in the residence parts. Time was when the pedestrian was content to trudge in the mud of the unpaved street. Later, when streets came to be paved, and the dirt gravitated more or less to the gutter in the center of the street, he found better walking by keeping to the higher part of the pavement near the property line. In our day, the property owner is required to provide a sidewalk for him to walk on. All of us, however, can remember what, not so many years ago, these sidewalks were. The time may come when they will be required to be all of concrete and of uniform surface; but everyday observation in walking the streets informs us that that time has not yet arrived.

We do not think that the existence of a slight inequality like this one imports negligence on the part of the city. While it behooves the city authorities to take into consideration the convenience and safety of the pedestrian, it behooves them also to remember that the obligation imposed upon the property owner to provide a sidewalk for the public along his front at his own sole expense is a more or less invidious, and oftentimes a most heavy, tax upon him, and that this burden should not be made unnecessarily burdensome; that it is well enough to be exacting in that regard on the business streets, where the comparatively narrow frontage and great value of the property make the burden lighter, and the constant use of the street by busy people increases the necessity of guarding against every possible pitfall; but that the wide frontage and less constant use of residence streets calls for the exercise of some discretion in compelling the reconstruction of sidewalks for correcting slight variations of level, or even for requiring the property owner, who in most cases has laid his sidewalk from levels furnished him by the city, to take up and

relay any part of it for making a gradual slope to the higher level of that of his neighbor subsequently laid. Perhaps, if such work had to be done at the expense of the city, and the city were in funds for the purpose, a more stringent rule might be advisable. Until sidewalks can be made perfect the pedestrian will have to take care how he treads.

That this has been the view taken by the courts in general appears from the excerpt from the brief of counsel, given in the margin.[1]

The decisions of this court are in line with those found in this excerpt.

In Peetz v. Railroad Co., 42 La. Ann. 541, 7 South. 688, the plaintiff had stumbled from having struck her foot against a piece of plank 2 inches thick nailed across the footway upon a bridge. The court rejected her demand, saying that:

"The duty of the municipal corporation is only to see that its sidewalks are safe for persons exercising ordinary care and prudence"

—and that by ordinary care the plaintiff would not have stumbled upon this slight obstruction.

In Burke v. Tricalli, 124 La. 774, 50 South. 710, where the plaintiff had stumbled upon a drain across the sidewalk, with sides sufficiently above the level of the sidewalk to catch the feet of pedestrians, the court said:

"It is incumbent upon passengers upon the streets to use ordinary care, at least, in guarding against the existence of the danger of such gutters and drains."

In the case of Blume v. New Orleans, 104 La. 345, 29 South. 106, relied upon by plaintiff, the accident occurred "at a place covered by a long shed, where there was little or no light," and where "between the properties the rise was abrupt," and where "there was no incline at all," and the inequality was from 5 to 6 inches. The case is not authority for the proposition that every slight in-

equality must be smoothed out, but only for the proposition that the city must exercise reasonable care in providing against danger.

In Aucoin v. New Orleans, 105 La. 271, 29 South. 502, the plaintiff was tripped by a loose plank in a sidewalk composed of planks. which, to the full knowledge of the city authorities, had long been "decayed, loose, and out of place." The case is totally different in its facts from the present one.

So, in O'Neill v. New Orleans, 30 La. Ann. 220, 31 Am. Rep. 221, the facts were entirely different. The plaintiff there slipped upon a flagstone which, instead of being in its right place spanning the gutter, had one of its ends in the gutter. How long it had been in that position, the decision does not say, but it had never been securely fastened; passing vehicles would knock it out of its right place, and, whenever this happened, the city authorities would content themselves with simply replacing it in the same loose fashion. It had been a pitfall to others on the same day and on other occasions.

[2] The duty of municipal corporations is to see that their sidewalks are in reasonably safe condition for persons exercising ordinary care and prudence. In the three cases last above mentioned ordinary care and prudence would not have saved the pedestrian from the accident, and the street had not been made reasonably safe. The situation is entirely different in the present case. Sidewalks are not as yet kept in perfect condition, and such slight inequalities in them as that in the present case are known to exist, and it is for the pedestrian to be on the lookout for them.

The judgment is set aside, and the suit dismissed, at the plaintiff's cost.

MONROE, J., dissents.

NOTE.

Excerpt from Brief of Counsel of Defendant.

Speaking of the duty of municipalities in respect to the maintenance of highways, Abbott, vol. 3, par. 1001, says:

---

[1] See note at end of case.

"It is not that of an insurer; it varies under different conditions and circumstances. It is not an absolute or an unvarying one; it is simply the duty to keep in a reasonably safe condition for ordinary travel the public way for the use of those having the right and exercising the privilege of travel."

To the same effect, we quote from Elliott on Roads and Streets, par. 793:

"As we have heretofore said, and as it seems necessary for the sake of clearness to here repeat, cities are not insurers of the safety of their streets and alleys. They are simply required to keep them in a reasonably safe condition for persons traveling in the usual modes by day and by night, and exercising ordinary care."

Elliott on Roads and Streets, par. 791, cites Beltz v. City of Yonkers, 148 N. Y. 67, 42 N. E. 401, holding that a city is not liable to one injured by stepping into a depression of 2½ inches in depth and 7 inches by 2½ feet across in the center of a sidewalk.

We quote from the opinion in that case:

"Assuming that the defendant's officers were men of reasonable prudence and ·judgment, could they, in the reasonable exercise of these qualities, have anticipated this accident or a similar one from the existence of this depression in the walk? They could undoubtedly have repaired it at very little expense; but the omission to do so does not show or tend to show that they were negligent, unless the defect was of such a character that a reasonably prudent man should anticipate some danger to travelers on the walk if not repaired. If the existence of such a defect is to be deemed evidence of negligence on the part of a city, then there is scarcely any street in any city that is reasonably safe within the rule, and when accidents occur the municipality must be treated, practically, as an insurer against accidents in its streets. The law does not prescribe a measure of duty so impossible of fulfillment, or a rule of liability so unjust and severe. It imposes upon municipal corporations the duty of guarding against such dangers as can ·or ought to be anticipated or·foreseen in the exercise of reasonable prudence and care. But when an accident happens by reason of some slight defect from which danger was not reasonably to be anticipated, and which, according to common experience, was not likely to happen, it is not chargeable with negligence."

This case was approved in Dayton v. Glaser, 76 Ohio St. 471, 81 N. E. 991, 12 L. R. A. (N. S.) 916, in which the city was held not liable for holes in the street 3 to 5 inches deep. The court quotes from Grant v. Enfield, 11 App. Div. 358, 42 N. Y. Supp. 107:

"Where the injury resulted from a hole in one of the highways, which was basinlike in shape, several feet in length, and only 3 or 4 inches deep, the court reversed for error in denying a motion to nonsuit."

Likewise the court in the Dayton Case quotes from Morgan v. Lewiston, 91 Me. 566, 40 Atl. 545, a very similar case to that at bar, except much stronger, the inequality being 5 or 6 inches, instead of about 1½ inches, and the accident having happened at night, instead of broad daylight:

"The facts were that the plaintiff was injured by stumbling at the junction of two sidewalks at the intersection of two streets. There was a difference of 5 or 6 inches in the grade of the two walks, and the fall was in the nighttime. The court ruled, as a matter of law, that the sidewalks were in a reasonably safe condition."

Quoting further from the footnote in 2 Elliott, par. 792:

"In Kennedy v. Lincoln, 122 Wis. 301 [99 N. W. 1038], it was held that a jury might find the municipality negligent where there was a rut from 8 to 23 inches in depth which causes the plaintiff's vehicle to be overturned. But, where a rut was only about 1½ inches deep, it was held otherwise." Burroughs v. Milwaukee, 110 Wis. 478, 86 N. W. 159.

See, also, Clifton v. Philadelphia, 217 Pa. 102, 66 Atl. 159, 9 L. R. A. (N. S.) 1266, 118 Am. St. Rep. 906, 10 Ann. Cas. 537; Nelson v. Spokane, 45 Wash. 31, 87 Pac. 1048, 8 L. R. A. (N. S.) 636, 122 Am. St. Rep. 881, 13 Ann. Cas. 280, "where slight ruts, depressions, or differences in level were held not to be sufficient to render the city liable."

The case of City of Richmond v. Schonberger, 111 Va. 168, 68 S. E. 284, 29 L. R. A. (N. S.) 180, is one of the leading cases.

The court quoted from the opinion in the case of Richmond v. Courtney, 32 Grat. 798, to the effect that "a municipal corporation is not an insurer against accidents upon its streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient if the streets are in a reasonably safe condition for travel in the ordinary modes by night as well as by day. It is not to be expected, and ought not to be required, that a city should keep its streets at a perfectly level and even surface."

We quote further:

"In Bigelow v. Kalamazoo, 97 Mich. 121, 56 N. W. 339, it is said: 'Even in our most prominent thoroughfares, paved in the most approved manner, curbs must be carried, and at the crossings they are from 2 to 6 inches higher than the pavement. The curb must be left bare, and inattentive people be liable to stumble, or, as is frequently done, a plank is placed upon an incline, upon which pedestrians carelessly advancing are liable to slip. In either case there is the minimum of danger. The walk is not absolutely safe; but it cannot be said that it is not in a reasonably safe condition. The same is true of nearly all of our alley crossings. Gutters are necessarily left for the passage of water. These crossings are not absolutely safe; but they may be reasonably so. Neither streets, sidewalks, nor crosswalks, can be constructed upon a dead level. People are

liable to stumble over a Persian rug upon a parlor floor, and streets cannot be made less dangerous than drawing rooms. * * * Cities are not required to keep streets in a condition absolutely safe for travel. A crosswalk must be reasonably safe; reasonably safe in view of the purpose for which it is constructed, the necessary uses of the street, and all the varying conditions.'"

In 20 L. R. A. (N. S.) 640, is an exhaustive note on the liability of municipalities for injuries resulting from unevenness in sidewalks. We quote:

"There are slight inequalities in sidewalks, and other trifling defects and obstructions, against which one may possibly strike his foot and fall; but, if the injury might be avoided by the use of such care and caution as every reasonably prudent person ought to exercise for his own safety, the city would not be liable." Indianapolis v. Cook, 99 Ind. 10.

"So the existence in a city sidewalk composed of flagging extending from an abutting building to the curb of a depression 12 by 6 inches in area and from 2 to 3 inches in depth, caused by a piece of flagging having been broken and then removed or forced into the ground, is not such a defect as will render the city liable to a person who was thrown down in broad daylight by stubbing her toe against the side of the depression which had existed for a period of from four to six months." Getzoff v. New York, 51 App. Div. 450, 64 N. Y. Supp. 636.

"So catching one's foot while passing over an incomplete, rough, uneven, sideling and slippery sidewalk, against a projecting or loose brick, and falling, is an accident which is liable to occur at any place with old and feeble, careless, and indifferent persons; and it is not such an accident as a municipality may be held responsible for, even though the sidewalk is in an imperfect condition." Waggener v. Point Pleasant, 42 W. Va. 798, 26 S. E. 352.

"And an apron or cover over a cement sidewalk, placed there in winter when the walk becomes slippery, constructed of pine boards laid lengthwise of the walk, and fastened to cleats laid crosswise, the entire thickness being less than 2 inches, and there being no beveled plank leading from the cement to the top of the cover, the ends of the boards being sawed off square, the cleats not coming out flush with the ends, does not constitute an actionable defect in the sidewalk." Kleiner v. Madison, 104 Wis. 339, 80 N. W. 453.

In Northrup v. Pontiac, 159 Mich. 250, 123 N. W. 1107, it was held that an obstruction caused by a grating in the sidewalk about 1½ inches above the level of the walk at one end, and 1¾ inches at the other, was not such as to render the walk not reasonably safe for public travel. This is almost the identical case at bar.

Again, in Purcell v. Riebe, 227 Pa. 503, 76 Atl. 212, the court said:

"A mere elevation in a pavement is not negligence per se, as the law does not require perfect sidewalks; the standard is reasonable safety."

In Covington v. Belser, 137 Ky. 125, 123 S. W. 249, the court held:

"That evidence that a brick in a sidewalk over which the plaintiff stumbled projected three-quarters of an inch above the surrounding surface was not sufficient to present a question of negligence for the jury."

And again, in Terry v. Perry, 199 N. Y. 79, 92 N. E. 91, 35 L. R. A. (N. S.) 666, 20 Ann. Cas. 796, the court held:

"That an inference of negligence was not justified by evidence that the plaintiff stumbled at a point in the sidewalk where one of the cement blocks was depressed 1½ inches below the surrounding blocks, notwithstanding that, prior to the accident, one or two other persons had been seen to stumble at the same place, and one of the trustees of the village had turned his ankle at that place, and had reported that fact to the board, which gave an informal direction to the street commissioner to call upon the owner of the adjoining property to make repairs to the walk."