ANNIE OVERTON, Appellee, v. CITY OF WATERLOO, Appellant.

Municipal corporations: DEFECTIVE WALKS: NEGLIGENCE: EVIDENCE.
1    In this action for personal injury caused by a defect in a sidewalk, the evidence is reviewed and held to require submission of the issues of negligence of the defendant city, and of contributory negligence on the part of plaintiff.

Same: CARE REQUIRED: INSTRUCTION. A pedestrian without knowledge
2    of defects in a sidewalk may assume that the city has exercised ordinary care to keep its walks in reasonably safe condition: but he is bound to use ordinary care for his own safety, and may not assume that he can use the walk with no care on his part.

**Same:** CONTRIBUTORY NEGLIGENCE. Where the attention of a pedestrian while walking along the sidewalk was attracted by the display of goods in the store windows, and while thus engaged she stepped in a hole in the walk which she had not noticed, fell and was injured, she was not guilty of contributory negligence as a matter of law.

*Appeal from Black Hawk District Court.*—HON. CHARLES E. RANSIER, Judge.

SATURDAY, MARCH 14, 1914.

ACTION for damages received from a fall on a sidewalk, caused by stepping into a hole in the walk. Trial to a jury; verdict and judgment for plaintiff for $500. Defendant appeals.—*Affirmed.*

*J. I. Kenyon,* City Solicitor, and *B. F. Swisher,* for appellant.

*J. T. Sullivan,* for appellee.

PRESTON, J.—I. No question is raised as to the sufficiency of the evidence to show negligence of the city, or the amount of the verdict. Plaintiff was hurt in the daytime, about 7:30 o'clock in the morning. The defect had existed for such a length of time as to charge the city with notice. There is no complaint of the instructions.

Appellant makes two points: First, that the evidence fails to show that plaintiff was injured because of the negligence complained of; and, second, that she was guilty of contributory negligence.

We are of the opinion that, under the evidence, both of these questions were for the determination of the jury. The negligence alleged is that plaintiff negligently allowed the cement sidewalk to become damaged, broken, and out of repair, so that a large hole about three inches in depth, twelve inches in width, and eighteen inches in length was allowed to remain in the walk. The court in its instructions limited the

1. MUNICIPAL CORPORATIONS: defective walks: negligence: evidence.

recovery, if any, to this particular charge. It appears that the walk at the point in question, as described by some of the witnesses, was composed of six-sided blocks of cement.

The witnesses did not all agree exactly as to the description of the defect. One witness describes it as a depression about three inches deep and about six inches wide and eighteen inches long, and says: "It seemed as though half of the block was loose; you would step on it, and it would tip." Another witness says he did not notice it very much, but saw a hole big enough to put your foot in, and that there was sand at the bottom of it. Another describes it, saying there was a hole there some way not quite square, and that it seemed to be a kind of a place broken out; as they were walking along they had been kicking the sand out; the cement was out and they had been kicking it out. Another says it was about ten by twelve inches, and three or four inches deep. Others think about two inches deep.

Whether plaintiff was injured by stepping in this hole is one of the questions. Appellant says the evidence does not show that she was so injured. The evidence is not very specific on the point, but, taking it all together, we think there was enough to take the case to the jury, and to sustain the verdict.

Plaintiff testified:

I was going to my work, and I walked until I got opposite the Golden Rule, . . . and I felt my foot give away. I was looking in the windows—in the store windows—as I was passing, and my foot turned, and I was thrown down, and I did not—I knew that I was opposite the Golden Rule, but I didn't know anything more for quite awhile. Well, I was going down, walking down the street, going to my work, and I was just walking at a moderate rate, and of course I was looking in the store windows as I was passing, and on a sudden I felt my foot turn, and I didn't know what it was, but I felt it give way down in a hollow, and I was thrown violently down on this side. I didn't lose my senses altogether, but I did very near, and they carried me into the Golden Rule store.

(Her cross-examination is as follows:)   Q. And, as you say, you were walking along looking into the store windows, and suddenly you fell?   A. Yes, sir.   Q. That was the way this accident happened?   A. Yes, sir.

Mrs. Green testified:

I saw her fall. I was standing in the door. I got there early and was standing in the door looking out, and this lady came hurrying along, stepped in the hole, and fell.

(On cross-examination, she said:) I was not looking at Mrs. Overton as she came along there especially but just stood in the door looking around. My attention was called to her as she fell. I saw her falling; that was the first I noticed her especially.   .   .   .   My attention was attracted to her because she was falling. She was the only person in front of the store at the time she fell. She fell close to the building—I should judge about five or six feet from the building.   Q. Now, for the purpose of getting this clear, Mrs. Green, I will ask you to state as to whether or not you saw her fall at the point in the walk where the hole was?   A. Yes, sir.   Q. You concluded that, because you saw a hole in the walk afterwards, that she fell in that hole, did you?   A. Well, I was sure that she stepped in the hole.   Q. That is the manner of reaching the conclusion that she stepped in the hole, isn't it?   A. Yes, sir; I saw her foot turn and saw her fall.  Of course, I could not see the hole to say sure that was it, but I saw her foot turn and saw her fall.   Q. Now, what makes you say that you saw her foot turn; what causes you to remember that now?   A. I naturally remember anything like that, when you see them sway and fall like she did.   Q. And you said that you didn't see her step in the hole?   A. No; I didn't see.   Q. So that, so far as what caused Mrs. Overton to fall, other than she fell on the sidewalk, you don't know and you couldn't tell positively?   A. No, sir; I couldn't swear that she stepped in the hole.   Q. And you don't know what caused her to fall on the sidewalk?   A. She fell right there by the hole, and they picked her up right there.   Q. She fell by a hole that you looked at afterwards?   A. Yes, sir.   Q. But whether she stepped in that hole, all you know is she fell on the sidewalk?   A. Yes, sir.   Q. You saw the hole as she was lying on the walk, did you?   A. Yes, sir.   Q. And she was lying by the hole?   A. Yes, sir.

Hargreave said he did not see plaintiff fall, but saw her right afterward, and that this hole was right close to where she fell; that the hole was about five feet from the building; that they picked plaintiff up about five feet from the building.

II. Plaintiff's evidence before quoted shows that at the time of her injury her attention was attracted to the show window of the store she was passing, and, while walking along and looking at the articles in the show window, she fell, as the jury could have found, by stepping into the hole in the walk. She was walking along as a person ordinarily would. Plaintiff did not know of the defect. It was a clear day. The court instructed:

2. SAME: care required: instruction.

The plaintiff had the right to assume that the city had exercised ordinary care to keep the walk in a reasonably safe condition for travel, but she had no right to assume that, without care on her part, she could safely walk along the same, but, on the contrary, it was her duty to use ordinary care and watchfulness for her own safety while passing along said sidewalk, and a failure to perform such duty would be negligence on her part. . . . In passing upon this issue, you will consider the location, the time of day, to what extent, if any, the alleged defective condition of the walk was visible or known, or should have been known to the plaintiff, the dangers reasonably to be apprehended therefrom, the manner in which the plaintiff was conducting herself at the time, and all the facts and circumstances as disclosed by the evidence concerning and surrounding the accident, for the purpose of determining whether the plaintiff was exercising the care and watchfulness for her own safety in walking along such sidewalk that an ordinarily careful and prudent person would have exercised under like circumstances, and whether a failure on her part to exercise ordinary care caused or contributed to cause such accident.

The case is ruled by the holding in *Mathews v. Cedar Rapids*, 80 Iowa, 459, and like cases, rather than *Ryan v. Foster*, 137 Iowa, 737, 741, and such cases. These two cases illus-

trate the distinction between a defect in the walk itself and an obstruction plainly observable on the walk. In the *Ryan* case the obstruction on the walk was of such size and character that it was plainly visible, and the most casual glance would disclose its presence. In that case the plaintiff's attention was not in any manner diverted.

Appellee has cited no cases on either point. Ordinarily the question of contributory negligence is for the jury.

Under the facts of this case, plaintiff was not guilty of contributory negligence as a matter of law, and the court properly submitted the case to the jury for determination. As bearing on this proposition, see, also, *Earl v. Dlask,* 126 Iowa, 361, and cases at 365; *Taylor v. Railway,* 112 Iowa, 157, 161.

3. SAME: contributory negligence.

There was no error, and the judgment is—*Affirmed.*

LADD, C. J., and EVANS and WEAVER, JJ., concur.