MARGARET A. JOHNSON, Appellee, v. CITY OF AMES, Appellant.

MUNICIPAL CORPORATIONS:    Streets, Etc.—Defects—Non-Negligent Defects—Depressions.    Defects in municipal sidewalks are, *as a matter of law,* non-negligent when of such character, in view of their location and use, as not to attract the attention of the proper public authorities and cause them, as ordinarily cautious and prudent persons, to anticipate danger therefrom to pedestrians. *Depression* of three inches held non-negligent.

PRINCIPLE APPLIED:    Plaintiff, after witnessing a parade, started for a near-by park, where there was to be speaking. She, along with a dense crowd of people moving in the same direction, was walking on the cement sidewalk of a street which was one of the two most traveled streets generally used in going to the park. The blocks of cement were about 4 feet square, and of a thickness of about 4 inches. This 4 inches

VOL. 181 IA.—5

was made up of a concrete base of about 3 inches and a top layer of cement about 1 inch thick. In the center of one of the squares was a space, apparently somewhat circular in form, and about 2 feet across, where the 1-inch top layer had worn, peeled or broken off, and from the outer edges of this space the foundation or base had been worn down and toward the center thereof until the depression was 3 inches deep at the center. There had been broken pieces of cement in this depression, but they had been ground down by travel, so that, at the most, the bottom of the depression was in a condition of *undefined* roughness. This defect had existed for several years. With the crowd of people immediately preceding and following her, plaintiff, not knowing of this depression, stepped therein, in some manner twisted her foot, fell, and was injured.

*Held, as a matter of law*, no actionable negligence was established against the city.

*Appeal from Story District Court.*—E. M. McCALL, Judge.

WEDNESDAY, MAY 16, 1917.

REHEARING DENIED SATURDAY, SEPTEMBER 29, 1917.

ACTION for damages consequent from falling because of a defective sidewalk resulted in a judgment for plaintiff. The defendant appeals.—*Reversed.*

*John Y. Luke,* for appellant.

*R. E. Nichol, C. G. Lee* and *I. R. Meltzer,* for appellee.

MUNICIPAL
CORPORATIONS:
streets, etc.:
defects: non-
negligent de-
fects: depres-
sions.

LADD, J.—The governor was to speak at the park in Ames in the afternoon of July 28, 1914. Mrs. Lou Johnson, a relative of plaintiff's husband's, who had died shortly before, and Evelyn Valen, daughter of a sister-in-law of plaintiff's, telephoned plaintiff to meet them down town and attend a band tournament which appears to have preceded the address. She did so and, after waiting a while, according to her story:

"The parade with Governor Clarke went by, and it

seemed like the whole town started for the park. Everybody was moving towards the park in kind of a procession. When we came to the Story County Bank, there was an awful jam, so it divided, and part of the crowd went up Main Street and some went up Douglass Avenue. I went up Douglass Avenue with Dora and Evelyn. We went a whole block north and then turned east at Fifth Street, and we were walking along with the whole crowd; of course, there was an awful jam around us, pushing along, and I stepped into a bad place in the walk and dropped onto my knees in a twist—I didn't drop straight down—I didn't fall sprawled out, but just dropped on my knees, and I was hurt so bad I didn't have much recollection of anything more for—oh, a little while, a few minutes, not long."

In this action she claims damages, alleging that:

"There was a depression in the sidewalk from two to four inches deep at the place where she fell, and there were broken pieces of concrete in said depression and around the edges thereof. And it is her belief that she stepped partly upon a broken piece of concrete and slipped therefrom; the same caused her to fall. That she was walking along said walk, immediately following some other pedestrians, and was unable to observe said defective condition of the walk, and did not know of the same, until she slipped and fell."

She also alleged notice and want of care on the part of the city and freedom from fault on her part. Defendant contends that the evidence failed to show negligence on the part of the city, and that the judgment should be reversed on that ground. The defect, such as it was, had existed for several years, and it was for the jury to say whether the city was charged with notice of its existence. Evidence tended to show that Fifth Street was one of the two most traveled streets between the business portion of the city and the city park; that there was a cement walk, along

which plaintiff and her companions were walking; that the blocks in the cement walk were about 4 feet square and about 4 inches thick; that there was a layer on top, one half of an inch to an inch thick on the concrete below, and that this layer had been peeled off. Thus far, there seems to be no controversy. But several witnesses in behalf of defendant testified that this layer was all that had been removed, and that the surface of the concrete below was smooth. On the other hand, witnesses in behalf of plaintiff testified that, on each side of the depression, the fall was abrupt for about an inch, and that the concrete was worn down toward the center of the square, extending its entire width, depth being estimated at from 2½ inches to 3 inches. Hart testified that this center was 2½ to 3 inches deep, and was through to the ground, though the water may have washed dirt in, and that:

"Close to the walk the surface was broken off, and after the surface was off, there was a kind of a sand or cement foundation, and that right in the center of the walk, or the broken part of the walk, it was worn quite a little deeper, and I should judge about a foot from the edge of the walk the surface was off, and for about a foot to the center of that it was worn through to the ground."

Mrs. Russell thought more than the top layer gone, and estimated the cement removed to a depth of 2 or 3 inches. Haines swore to a like depth, and that after rains he had walked that way in the dark and stepped in water settled there, and that it ran over the tops of his low shoes. Kooker estimated the depth at 2½ to 3 inches. The plaintiff and her companions thought the depth 2½ to 3 or 3½ inches.

Attention has been directed to enough evidence to show that there was room for the jury to reject the evidence adduced in behalf of the city, and find that more than the top layer had been removed, and that the concrete had been

worn or taken away to the depth of 2½ inches or slightly more at the center of the square. Though some evidence indicated that there had been broken pieces, these appear to have been removed or ground down in travel so that, at most, it might have been found that the surface of the concrete was "rough," without any indication of the nature of such roughness nor of the pieces or particles of concrete lying in the depression. In deciding whether a case was made for the jury, we are to assume that the concrete had been broken or worn at the center so that the depression was as much as, but not to exceed, 3 inches deep. No case precisely like this has been presented to this court. The depth of the hole in the sidewalk considered in *Platts v. City of Ottumwa,* 148 Iowa 636, was not stated, the court merely saying that:

"It is shown beyond all reasonable doubt that there was a depressed place or hole in the walk, and it was of such depth or extent that a person stepping into it unexpectedly was liable to fall or be thrown down."

In *Overton v. City of Waterloo,* 164 Iowa 332, a piece of the walk about 12 inches wide and 18 inches long and 3 inches deep was out of a cement sidewalk, but negligence on the part of the city was not questioned. In *Cooper v. City of Oelwein,* 145 Iowa 181, the edge of a block was from 1½ to 1¾ inches higher than the surface next to it, and the district court submitted to the jury the issue as to the city's negligence. Whether allowing a street to be in that condition would constitute negligence was not considered, as judgment had been entered for defendant. In *Patterson v. City of Council Bluffs,* 91 Iowa 732, at the point where a new brick walk joined an old plank walk there was a perpendicular offset of nearly 4 inches, and with reference thereto the court said:

"That such an offset is more or less dangerous is amply demonstrated by the accident to the plaintiff. Whether

such an offset is so dangerous as that to permit it is negligence depends upon the surrounding circumstances, such as the proximity of lights, the amount of travel, and the like. We think it was for the jury to determine, in the light of the circumstances, whether the city was negligent in permitting this offset."

See, also, *Hanson v. City of Anamosa,* 177 Iowa 101.

The decisions elsewhere are conflicting. In *City of Key West v. Baldwin,* (Fla.) 67 So. 808, the fall in the walk was 4 or 5 inches, and the issue of negligence was held to be for the jury. In *Bieber v. City of St. Paul,* (Minn.) 91 N. W. 20, where it appeared that the walk was constructed of hexagonal cement blocks, one of which had become out of level, about 6 inches from a stone step leading to the entrance of a store, the outside was depressed an inch and a quarter, and the inside a little less, and, as the street was much used, the question of the defendant's negligence was. held to have been for the jury. But Lewis, J., dissenting, observed that:

"One may count such depressions, projections, and inequalities by the hundred all along the business as well as the residence streets in this and other cities. Common prudence never has required any such limit as is set down by the decision in this case. The time may come when the people will require that degree of perfection in respect to streets and walks which is adopted in public parks or in the private grounds of the wealthy, but, according to the standard now prevailing, by common consent the wayfarer should assume the responsibility and risk of danger to be encountered in walking into the yawning gulf of destruction presented by a cement block in the sidewalk depressed on one side to the extent of an inch and a quarter."

The case is an extreme one, and, notwithstanding the peculiar circumstances, seems contrary to the current of authority. See *Terry v. Village of Perry,* (N. Y.) 92 N. E.

91; *Haggerty v. City of Lewiston,* (Me.) 50 Atl. 55; *Bur-roughs v. City of Milwaukee,* (Wis.) 86 N. W. 159; *Isaac-son v. City of Boston,* (Mass.) 80 N. E. 809.

The decisions on defects, such as holes or depressions in walks, will be found collected in notes to *Elam v. City of Mt. Sterling,* (Ky.) 20 L. R. A. (N. S.) 512, 634; *City of Lexington v. Cooper,* (Ky.) 43 L. R. A. (N. S.) 1158; and *Mayor, etc., v. Crook,* (Miss.) L. R. A. 1916 A, 482, 490. An examination of them discloses that the great weight of authority is against the inference of neglect on the part of the defendant city. Thus, in *Beltz v. City of Yonkers,* (N. Y.) 42 N. E. 401, the depression was about 2 feet 6 inches long by 7½ inches wide, and 2½ inches in depth, and the court, in holding that the city, in allowing such depression, was not negligent, said:

"There are very few, if any, streets or highways that are or can be kept so absolutely safe and perfect as to pre-clude the possibility of accidents, and whether, in any case, the municipality has done its duty must be determined by the situation, and what men knew about it before, and not after, an accident. When the defect is of such a character that reasonable and prudent men may reasonably differ as to whether an accident could or should have been reasonably anticipated from its existence or not, then the case is gen-erally one for the jury; but when, as in this case, the de-fect is so slight that no careful or prudent man would rea-sonably anticipate any danger from its existence, but still an accident happens which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law. Assuming that the defendant's officers were men of rea-sonable prudence and judgment, could they, in the reason-able exercise of these qualities, have anticipated this ac-cident, or a similar one, from the existence of this de-pression in the walk? They could undoubtedly have re-

paired it at very little expense, but the omission to do so does not show or tend to show that they were negligent, unless the defect was of such a character that a reasonably prudent man should anticipate some danger to travelers on the walk if not repaired. If the existence of such a defect is to be deemed evidence of negligence on the part of a city, then there is scarcely any street in any city that is reasonably safe, within the rule, and when accidents occur, the municipality must be treated, practically, as an insurer against accidents in its streets. The law does not prescribe a measure of duty so impossible of fulfillment, or a rule of liability so unjust and severe. It imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. But when an accident happens by reason of some slight defect, from which danger was not reasonably to be anticipated, and which, according to common experience, was not likely to happen, it is not chargeable with negligence."

In *Jackson v. City of Lansing*, 121 Mich. 279 (80 N. W. 8), the depression was in an artificial stone walk 1½ to 2 feet in area, and sloped toward the center, which was 1½ to 3 inches deep, the south side being abrupt with a depth. of 1½ inches, and the court declared the city not liable for an injury suffered from stepping into the depression. In *Mayor v. Crook,* supra, brick had gotten out of place, leaving a depression 3 inches deep, and the city was held not liable. In *City of Louisville v. Haugh,* (Ky.) 163 S. W. 1101, the hole was between two rails of a street railway track, and according to the witnesses, other than the assistant city engineer, was 6 or 7 inches deep; but he testified that, when measured about a year later, it was but 2¼ inches deep. An instruction that if it was no more than 2¼ inches deep there would be no recovery, was refused, and in approving the ruling, the court declared that:

"The distinction between a hole in the street which would render a street unsafe and a hole that would not do so is a thing practically impossible to define. The depth of the hole alone would not control such characterization. Its shape, its size, its location with reference to the conditions and extent of public travel, and many other considerations would enter into the determination of the question of the effect of such hole upon the safety of the street, and would make the inquiry as to whether such hole amounted to a want of ordinary care upon the part of the city peculiarly a question for the jury."

The same thought was expressed in *Baxter v. City of Cedar Rapids,* 103 Iowa 599, where the plaintiff caught her foot on an obstruction, in the way of one of the planks at a street crossing, projecting from 1½ to 3½ inches above the walk. The defendant requested an instruction that:

"If the crosswalk was only raised about 2 inches above the sidewalk, to which it was an approach, then the crosswalk was reasonably safe. * * * A simple rise of 2 inches from a sidewalk to a crosswalk would not be such an obstruction that you could find that it was not in a reasonably safe condition."

In holding that the instruction was rightly refused, we said, speaking through Robinson, J.:

"Whether an obstruction or other defect in a walk is of a character to make the municipality which permits it to exist responsible for it, does not necessarily depend upon the size of the defect, but upon the effects which may reasonably be apprehended from it upon persons who use the walk in a proper manner. These will vary with the circumstances of different cases, and whether the municipality is liable for a defect in its streets or walks will, as a rule, be a question of fact, to be determined by the jury under the instruction of the court, and not a mere question of law, to

be determined by the court alone. The evidence in this case authorized the jury to find that the defect in question was of a serious character, even though the plank which tripped the decedent was not more than 2 inches higher than the sidewalk, and the instruction under consideration was properly refused."

The facts of the case readily distinguish it from that at bar, for, in the nature of things, an obstruction extending above the surface of a sidewalk is more likely to interfere with travel than a slight depression below the surface. This is illustrated by the Michigan cases. An obstruction more than 2 inches above the walk is said to be sufficient to carry to the jury the issue of negligence on the part of a municipality, but not so where the elevation of the obstruction is less than 2 inches. *Baker v. City of Detroit,* 166 Mich. 597 (132 N. W. 462). On the other hand, a depression of 3 inches is held to furnish no evidence of negligence. *Jackson v. City of Lansing,* supra. It is a matter of common knowledge that no sidewalk is perfect, and that inequalities exist in the surface of the sidewalks of every city. The defects are of infinite variety. Depressions in concrete or stone walks are common. Absolute safety is not required; only the exercise of reasonable care,—that which an ordinarily prudent man would exercise under like circumstances in maintaining sidewalks in a reasonably safe condition,—is exacted of the city. Not every defect, even though it may cause injury, is to be attributed to municipal carelessness. A perfect level cannot be required. Slight inequalities cannot well be avoided. As was said in *Bigelow v. City of Kalamazoo,* 97 Mich. 121 (56 N. W. 339) :

"Even in our most prominent thoroughfares, paved in the most approved manner, curbs must be carried, and at the crossings they are from 2 to 6 inches higher than the pavement. The curb must be left bare, and inattentive people be liable to stumble, or, as is frequently done, a plank

is placed upon an incline, upon which pedestrians carelessly advancing are liable to slip. In either case there is the minimum of danger. The walk is not absolutely safe, but it cannot be said that it is not in a reasonably safe condition. The same is true of nearly all of our alley crossings. Gutters are necessarily left for the passage of water. These crossings are not absolutely safe, but they may be reasonably so. Neither streets, sidewalks, nor crosswalks can be constructed upon a dead level. People are liable to stumble over a Persian rug upon a parlor floor, and streets cannot be made less dangerous than drawing rooms."

The same thought is well expressed in *Keen v. City of Mitchell,* (S. D.) 157 N. W. 1049, where the court, in holding that a depression in the street 6 or 7 inches deep and 12 feet wide might not be found to constitute negligence on the part of the defendant city, observed that:

"It seems to be generally held that a municipal corporation is not liable for every accident that may occur within its limits. Its officers are not required to do every possible thing that human energy and ingenuity can do to prevent the happening of accidents or injuries to the citizens. The law does not require that the city shall do more than keep its streets in a reasonably safe condition. The obstructions or defects, to make the corporation liable, must be such as are in themselves so dangerous that a person exercising ordinary prudence could not avoid injury in passing them. It is only against defects in streets of sufficient gravity to justify a careful and prudent man in anticipating danger from the existence thereof that a municipality is bound to guard. Cities are not required to keep their streets free from irregularities and trifling defects. It is the duty of a municipality to see that all its streets, open for travel, are kept in repair and free from obstruction, and this duty has been performed when the way is without ob-

struction, or such structural defects as would endanger the safety of travelers in the exercise by themselves of ordinary care."

That one has suffered injuries in traveling over the street does not, of itself alone, justify the inference that the street is negligently defective, nor that the pedestrian has been careless. Such injury may have been purely accidental, even though occasioned by some want of perfection in some portion of the highway, without fault of the traveler. Such may have been the situation in the case before us. In any event, we are persuaded that the proof was not such as to warrant a finding that it was due to any want of ordinary care on the part of the defendant. Had the sidewalk been made originally with such depression, the city could hardly have been thought negligent. When constructed, the walk was level, and the depression was occasioned by the action of the elements, or possibly the hand of man, and we seem not to have reached the time when even ordinarily prudent men are so vigilant as to anticipate every possibility of accident, though we seem to have come dangerously near declaring municipalities insurers of the safety of pedestrians, and exacting perfection in the maintenance of the walks by cities. If the depression was rough, the respect in which it was rough was not disclosed, and if there were small pieces of concrete therein, they were not shown to be such as to render the way dangerous. Undoubtedly, the depression constituted a defect in the walk, but that alone was not enough. It must have been a defect of such a character as, in view of its location and the use made of the walk, to attract the attention of the officers of the city and cause them, in the exercise of that degree of caution an ordinarily prudent person would exercise under like circumstances, to anticipate danger therefrom to the pedestrian passing along the walk; and we are of opinion

that the defect was not such as thus to put the cty on its guard. The city was not at fault, and the judgment is— *Reversed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.