NINA M. KIPLE, Appellant, v. INCORPORATED TOWN OF CLERMONT, Appellee.

MUNICIPAL CORPORATIONS: Streets and Alleys—Obstructions—Negligence. Evidence reviewed, in an action for damages for personal injuries from wires placed across the street, and held sufficient to go to the jury on the question of the town's negligence in permitting the stretching of wires across a street between telegraph and electric light poles on either side, and the placing of a banner thereon, and in not guarding against the effect of the wind, which caused the poles to lean towards the street and the wires to slip down.

*Appeal from Fayette District Court.*—A. N. HOBSON, Judge.

OCTOBER 14, 1919.

REHEARING DENIED JANUARY 26, 1920.

ACTION to recover damages for personal injury. Opinion states the case. Directed verdict for the defendant in the court below. Plaintiff appeals.—*Reversed and remanded.*

*James Cooney* and *E. H. Estey,* for appellant.

*W. W. Comstock* and *Pickett, Swisher & Farwell,* for appellee.

Gaynor, J.—This action is to recover for personal injuries, caused by coming in contact with wires stretched or strung over and across Union Street in defendant town. The cause was tried to a jury. At the conclusion of plaintiff's evidence, on motion of the defendant, the court instructed the jury to return a verdict for the defendant. Judgment being entered upon the verdict, plaintiff appeals, and the only complaint made in this court is that the court erred in so doing.

Some complaint is made of the manner in which the appellant has presented the case to this court, and it is urged that it has not complied with the rules. However, an amendment to the original argument was filed, which, in our judgment, cures all the defects complained of.

There is but one question: Did the court err in taking the case from the jury? This involves the question whether or not, under the record made by the plaintiff, she was entitled to go to the jury.

The injury occurred shortly after eight o'clock on the 19th day of June, 1917. Plaintiff was riding in a buggy, driving westward on what is known as Union Street. This is one of the principal streets. Main Street runs north and south, and intersects Union Street, and is the main business street. The town has a population of 700 people. On the evening in question, the plaintiff, a young woman 19 years of age, with two companions, was driving in a single buggy down Union Street towards Main Street, and, as she was passing along this street, at a point about 1,000 feet east of Main Street, came in contact with wires stretched across the street. These wires struck plaintiff across the eyes, then caught the buggy top, caused the horse to lunge, and plaintiff was thrown out and injured. Her injuries were severe, but we need not stop to characterize them otherwise.

Several days, four or five, before the happening of this accident, the mayor of the defendant town, assisted by oth-

ers, caused two wires to be stretched across Union Street in the following manner: There is a telephone pole on the south side of this street; on the opposite, or north, side, an electric light pole. This south or telephone pole was about 20 feet high, with a diameter of 5 inches at the top, and about 12 inches at the bottom. It had no guy wires to hold it in position, and was imbedded in the ground about 2½ or 3 feet. Several days prior to the happening of the accident, the mayor, in company with others, stretched these wires from the north pole to the south pole over this street. The street was about 60 feet wide. These wires were placed about two feet apart, the upper wire near the top of the pole. To these wires a banner was attached, advertising a Chautauqua meeting to be held in defendant town. This banner was about 12 feet long and 2 feet wide, and was attached to the upper and lower wires by rings, through which the wires were run. The banner was placed over the middle of the street. In stretching these wires, a jackstrap was used, to get extra pressure, and to pull the wires tight. They were made taut, and as tight as they could be pulled with a jackstrap. When the wires were put up, the bottom wire was in the neighborhood of 15 feet above the surface of the street. Between the time of the accident and the putting up of these wires and this banner, and, we take it, some time before the accident, normally high winds prevailed, and the telephone pole on the south side was found by passers-by to be leaning towards the street. How long it had been so leaning before the accident, does not appear. At the time of the accident, this south or telephone pole had become so loosened from its foundation that it leaned towards the street sufficiently to allow these wires to sink or sag, so that the plaintiff and her vehicle did come in contact with them. The evidence shows that the pole leaned towards and over the street, and the wires were discovered to be in such close

proximity to the surface of the street as to impede travel for three or four hours before the accident.

At the time plaintiff attempted to pass, they had lowered to a point where they struck plaintiff across the face, while riding in an ordinary top buggy. The wires, at the time of the injury, certainly rendered the street unsafe for travel, and this is not questioned.

The liability of the defendant for the accident may be considered from two viewpoints: Did the condition at the time of the injury exist for such a length of time before the injury that the defendant, by the exercise of reasonable care, could have discovered and should have known of the condition, and remedied it before the injury? It was the duty of the town to exercise reasonable care to have and to keep its streets in a reasonably safe condition for travel. It was not reasonably safe for travel at the time of the injury.

If we assume that the town did not know of this condition, or if we assume, as a matter of law, that the condition that caused the injury had not existed for sufficient time to charge the town with notice, we turn then to a consideration of the causes which led up to and produced the condition which rendered the street admittedly unsafe. This involves a consideration of the duty of the city to exercise reasonable care to anticipate and guard against injuries which may reasonably be expected to flow from those things which the city permits to exist on, beside, or over the street, that do not, undisturbed, immediately make the street unsafe, yet may, through the operation of natural laws or uncontrollable natural agencies on the thing permitted, produce conditions that render the street unsafe: that is, whether the city is liable for a failure to exercise reasonable care to guard the traveler on the street from consequences that may reasonably be expected to flow from the operation of the elements on the thing permitted. If the

defendant permitted the original condition to exist, and, in the exercise of reasonable care, should have anticipated the consequences that might and did follow, then it cannot be heard to complain that it did not have notice that consequences reasonably to be expected did follow; for it is held to know that which it could have anticipated by the exercise of reasonable care, and could, by such care, have anticipated and guarded against.

The only evidence in the record as to the length of time that the wires were down before the injury comes from two travelers upon the street, who testified that, three or four hours before the injury, they passed along this street, and found the wires down so low as to obstruct passage. If we should assume that this length of time was not sufficient to charge the city with notice that the wires were down, the question still remains: Should the town be held responsible for the thing that did happen, and this, independent of notice or knowledge of the *then condition?* The defendant had. notice and knowledge that these wires were stretched above the street, and just how they were stretched and fastened. It had notice and knowledge, through its mayor, that a banner was attached to these wires, exposed to the action of the wind. These wires had remained attached to these poles, just as we have described, for several days before this accident. They were in plain view of all passersby, and on one of the most traveled thoroughfares of the town, and but a short distance from its business street. Strong winds had blown across the town between the time these wires were so placed and the time of the injury. The banner, at the time of the injury, was shown to be torn into shreds, only the rings remaining upon the wires. The south pole was pulled down towards and over the street, so that the wires attached to it obstructed travel upon the street. That was the condition at the time of the injury. So far as this record shows, the city made no effort to ascertain whether these poles were securely fastened in the

ground to support these wires and this banner. The wires were drawn taut. A banner 12 feet long and 2 feet wide was placed upon them, exposed to the action of the wind. The jury could justly find that the wind, operating upon this banner, had pulled this pole from its mooring, and caused the wires to drop. Can it escape the charge that it disregarded its duty to keep the streets in a reasonably safe condition by the mere fact that the wires might not or even would not have fallen, except for the concurring action of the wind?

The jury could well find that the injury followed as a proximate result of a condition known to the town, and permitted to exist for more than four days before the injury. When it permitted the use of the street, it was bound to take notice and guard against the action of the elements upon the thing which it permitted to exist, and it was for the jury to say whether or not, in the exercise of reasonable care for the safety of the traveler upon the street, in the discharge of that duty which it assumes to keep its streets in a reasonably safe condition, it should have anticipated and guarded against the effect of the action of the elements on the thing which it permitted to exist. The record here presented makes it a pertinent matter for jury inquisition, and the court erred in not submitting it to them.

We have this to suggest. Had the pole fallen without warning on a passer-by, and it could be made reasonably to appear that the fall of the pole was due to the action of the wind normally prevailing in that territory, operating upon the thing which the defendant permitted to exist, the defendant could be held liable on the theory that it consented to the menace which the thing itself created, and defendant permitted to remain over the street, subject to the action of the elements upon it, the effect of which could reasonably be anticipated. As supporting the conclusions herein expressed, see *Bliven v. City of Sioux City*, 85 Iowa

346; *Wheeler v. City of Ft. Dodge,* 131 Iowa 566, and cases therein cited.

On the whole record, we think there was a fair question for the jury, and the court erred in directing a verdict for the defendant. The case is, therefore, reversed and remanded for further proceedings in harmony with this opinion.—*Reversed and remanded.*

LADD, C. J., WEAVER and STEVENS, JJ., concur.