BRYAN & COMPANY et al., Appellees, v. L. H. SCURLOCK et al., Appellants.

**APPEAL AND ERROR:** Law of Case—Conditions Attached to Order.
1  Conditions attached to a judgment in the trial court and duly affirmed on appeal become a finality, and must be met and complied with, whether right or wrong. So held where the defendant was given the opportunity to avoid a money judgment by turning over to plaintiff, within a named time, certain shares of stock in a corporation whose chief asset was a patent, together with a verified showing, at time of delivery, that the company (1) *was the owner* of the patent, or (2) *was the owner subject to good-faith incumbrances,* and where defendant delayed the delivery until the company had lost title by foreclosure.

**CORPORATIONS:** Damages in re Conversion of Stock. A defendant
2  who has been adjudged to have converted plaintiff's corporate stock, and has forfeited the right given him by the court to deliver the stock to plaintiff, and thereby avoid a money judgment, may *not* insist that the period of time within which plaintiff may prove the value of the stock did not begin until defendant failed to exercise his court option to deliver the stock. Said period begins on the date of the conversion by defendant.

**CORPORATIONS:** Conversion of Stock—Market and Actual Value and
3  Elements Bearing Thereon. Plaintiff in an action for conversion of corporate stock by defendant may recover the market value at the date of the conversion, or within the legally allowable period thereafter, and in such case the condition of the corporate property and

finances of the company is wholly immaterial. In case the stock had no market value within such period, then the actual value may be proven, and in such case the condition of the corporate property and finances may be very material.

CORPORATIONS: Market Value of Stock. Evidence of nonordinary
4    sales of stock, i. e., sales on an agreement by the seller to repurchase, and sales payable with equities, is not indicative of market value.

CORPORATIONS: Conversion of Stock—Interest. A wrongful con-
5    version of corporate stock carries interest at the legal rate from the date of conversion.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

DECEMBER 31, 1920.

THIS is stated to be an action in equity, under a supplemental petition to recover a money judgment for certain shares of stock in the M. & S. Gear Company, which the trial court had previously ordered transferred to the plaintiffs, appellees. It was the theory of the appellees—and it prevailed below— that defendants were guilty of wrongful conversion of shares that plaintiff equitably owned in a patent; that defendants, appellants, had wrongfully converted as well the proceeds of selling said invention; and that plaintiffs were entitled to a money judgment for the value of said shares, on the theory that same had been fraudulently withheld from plaintiffs on or about December 1, 1913. The trial court entered a money judgment in $64,899.88, and arrived at that amount by finding the value of said shares to be 14 cents on the dollar. The appellants urge that there should have been no money judgment at all, and that, passing that, the judgment entered is excessive.—*Modified and affirmed.*

*Williams & Clark* and *Sargent & Gamble,* for appellants.

*Edwards, Longley, Ransier & Smith,* for appellees.

SALINGER, J.—I. On the main trial of this cause, the plaintiffs, declaring that the option was not given to the defendants,

but was given to the trial court, gave that court the option to order either that certain shares of the M. & S. Gear Company should be by the defendants transferred to the plaintiffs, or to give plaintiffs a money judgment for the alleged value of said shares. The court exercised said option by making an order that, within a time stated, a certain number of said shares should be transferred and delivered by defendants to plaintiffs. The decree ordered further that the tender of transfer should be accompanied by a certificate under oath, stating "that the title to and possession of said letters patent is in the M. & S. Gear Company." There was a further provision in the nature of an exemption, whereunder the transfer would be sufficient, so long as it was shown that said title to the patents was still in said company, even though there were outstanding "contracts, liens, pledges or incumbrances, if any, as may heretofore have been made in good faith for the benefit of the M. & S. Gear Company." The decree said nothing about what should be done if said order was not complied with, except that, if there was failure to comply within the time specified, the party not in the wrong was given the right to bring the matter before the court on three days' notice, "for such orders and decrees as may be necessary and proper," the court retaining jurisdiction of the cause and the parties for that purpose. This order was not complied with. Instead, the defendants appealed to this court. On the appeal we made the following order:

1. APPEAL AND ERROR: law of case: conditions attached to order.

"It is now ordered that, within sixty days from the time that this opinion becomes final, the defendants shall transfer the stock as the decree below directs. If that be not done, the district court shall take evidence on the value of such stock, and thereupon determine what money judgment shall be rendered against defendants, and to enter such judgment accordingly." *Bryan & Co. v. Scurlock*, 184 Iowa 378, at 384.

The decision here became final on September 30, 1918, when petition for rehearing was denied.

If the defendants have complied with this mandate at all, they did so within the time allowed for performance. While the order in this court specifically provided that, in event of noncompliance, there should be a hearing on the value of the

shares, and judgment entered accordingly, this order was not self-executing. The plaintiffs recognized this by initiating their complaint of nonperformance with the filing of a supplemental petition. They had power to waive any complaints they had the right to make. It must be held that they elected to state what complaint they had in this supplemental petition. We therefore hold that that petition limits the field of inquiry on this appeal. Many complaints of nonperformance are made now. But the supplemental petition and its amendment are all confined to the single ultimate complaint that, instead of furnishing the certificate under oath, showing that the title in said patent was still in said company, the certificate shows (and the fact is) that title thereto has been lost. The trial court conducted an investigation of the value of the shares, entered judgment for their value as it found it, and the present appeal urges, first, that no judgment at all should have been entered, and, second, that, if that be passed, the one entered is excessive.

II.    We shall not follow the arguments in all their ramifications. The trial court did enter a judgment for the money value of the shares. We are satisfied that it was its duty to do this. It is no answer that the title was lost because a good-faith incumbrance had been foreclosed, and that the order of the trial court originally made compelled the plaintiffs to be satisfied with the delivery of the shares, subject to good-faith incumbrances. The opportunity to save themselves from a money judgment by surrendering shares of stock was a privilege. With it went every condition attached to that privilege, no matter how onerous. These appellants cannot avail themselves of the part of the order which relieved them from a money judgment, and be relieved as well from the conditions that were attached. Right or wrong, it was ordered below that defendants could gain nothing by a transfer of shares unless, at the time of the transfer, the title to the patent was in the company. At the time when the attempt to transfer was made, the title was not in the company. The privilege was to transfer shares in a concern which owned this patent, and that such transfer should suffice, even though the assets of the company were mortgaged. The substitution offered is a transfer of shares in a company that no longer owned the patent. The argument for the substitution is that loss of title

in the patent was no greater impairment of the value of the shares than would be a good-faith incumbrance in an amount greatly larger than the value of the patent. To this there are two seemingly conclusive answers. (a) These plaintiffs might have been willing to take their shares, no matter how large the incumbrances. Over-optimism as to the future of enterprises heavily mortgaged is not uncommon. (b) Whether it is right or wrong, the trial court ordered, and this court affirmed the order under which there could be no escape from a money judgment, if any damage was shown, unless shares were transferred when the company still owned the patent. At no time was it ordered that the defendant should be exonerated from all liability if, instead of being able to certify that the title was still in the company, it offered, instead, a good excuse for the company's having lost the title.

While the first appeal was pending here, and for some time earlier, it was apparent that an $80,000 mortgage might be foreclosed. This court could have been appealed to, to modify the order below, instead of affirming it, on the argument that just what has happened might happen. In other words, appellant might have said to us:

" "Here is an order that we must show title. It is possible,— nay, it is probable,—that, without fault on our part, we may be unable to do this. This order should be modified so that a transfer of shares shall be sufficient if it be shown that title to the patent has been lost through the foreclosure of a good-faith incumbrance."

We were either asked to do this or we were not. This is quite immaterial. For we failed to make any such modifications. Right or wrong, that is the law of the case. For the purposes of any retrial here, whatever was done or not done became a finality when the petition for rehearing was denied. In the same cause we cannot change our position in a second appeal, even if we were utterly in error on the first appeal. See cases collated in 1 McClain's Digest 269, 270. It follows that, right or wrong, mild or harsh, the defendants have lost their opportunity to avoid some sort of money judgment. Right or wrong, mild or harsh, that privilege depended upon title's re-

maining in the corporation, and the corporation has lost title. No matter why it lost it, the loss is fatal to the privilege.

### 2-a

We have, too, the argument that the defendant Wolf, especially, did all in his power, all that a single stockholder might do, to avoid this foreclosure, and that his appeals to these plaintiffs to aid him were disregarded. The conditions in the order were that title must be in the company when the transfer of the shares was made. The showing of this excuse for losing title is also no substitute for showing that title existed. Aside from that, it is confessed that, at the very time when plaintiffs were being appealed to, to co-operate with Wolf in saving the company from this foreclosure, these defendants, including Wolf, were appealing to this court, asserting that they were under no liability to the plaintiffs, and that they were under no duty to transfer to them a single share of stock. Surely, these plaintiffs have lost no rights by refusing, under these conditions, to join the defendants or some of them in financing the affairs of the corporation in which they were being denied all interest, and at a time when this court, for all that could be known, might hold that plaintiffs had no interest.

We repeat, the trial court did not err in proceeding to ascertain what damages, if any, were due.

III.   The question remains whether any damage is shown. In the path to determining this question is a dispute over the basis upon which damages shall be assessed. It seems to be

2. CORPORATIONS: damages *in re* conversion of stock.

conceded that the rule in *Doyle v. Burns*, 123 Iowa 488, governs: that is to say, plaintiff may recover the highest value these shares had during some period of time. The quarrel is over what that period is. As we gather it, the position of the appellants is that the period in which the plaintiffs may select prices did not begin until the appellants failed to comply with the order giving them an option to transfer the shares. We are unable to concur in this contention. The suit brought by the plaintiffs is not a suit claiming damages because the defendants failed to comply with the order of court. The basis of their suit is that the decree of August 17, 1916, decided in their favor their claim that, long

before the suit was even instituted, the defendants had been guilty of converting stock that equitably belonged to the plaintiffs. It has become the law of the case that there was such earlier conversion. The order to transfer shares was an incidental privilege. There never was a decision that defendants had not converted the shares long before plaintiff sued. The order aforesaid merely gave the defendants the privilege of avoiding the consequences of the earlier conversion by complying with the order. As said, this privilege has been lost. The case now stands as if said order had never been made, and the court was proceeding to ascertain what damage resulted from the earlier conversion found by the court. It results that the plaintiffs have a long period of time wherein to select prices. But the right to select gives plaintiffs nothing. When they have selected, their right to recover must be tested by what loss they have sustained when measured by conditions existing at the time selected. The court may allow damages based on the market value of the stock at the time selected, if it then had a market value. If it had no such value, the basis of compensation must be actual value at the time selected. If it becomes necessary to assess damages based on actual value, then the value of the patent and the financial condition of the corporation enter into assessment. That is to say, while loss of title to the patent and the existence of a large good-faith incumbrance are immaterial on the question whether defendants have complied with the conditions attached to the privilege once given them, the value of that patent before title to it was lost and the existence of such good-faith incumbrance, if it be that, must be considered on what was the actual value of the shares which defendants have converted.

3. CORPORATIONS: conversion of stock: market and actual value and elements bearing thereon.

We turn first to the question of whether the evidence shows the existence of a market value. If it does, that is the measuring stick. In that event, it does not matter what the financial condition of the corporation was, because the market value was what it was, despite such condition. And if the shares had not been converted by the defendants, the plaintiffs could have sold them at that market value. If the existence of market value be established,

4. CORPORATIONS: market value of stock.

the plaintiffs are entitled to recover on the basis of the highest value the shares had in the market at the time chosen by plaintiffs. And we turn to the evidence to ascertain whether there was a market value, and, if so, what it may fairly be said to have been, at its highest. The trial court found the converted shares were worth 14 cents on the dollar. We must confess we can find no basis in the evidence for that valuation. The shares were worth either greatly more than that or greatly less. There is evidence of purchases at as high as $25 the share, and sales at $20 and at $16. But we are satisfied that they are no indication of market value. In effect, they were sales made to Holden by some of the parties to this suit; and their purchase is indicative of but the same optimism which induced Holden to finance the corporation in tremendously large sums. Sales within the range of the prices mentioned were also made to others. But they were made by Holden, with agreement to repurchase, and he did repurchase. There were other sales within the range of these higher prices, but they, too, moved on personal consideration, and were paid for, say, with equities, and, on the whole, were sales that are no evidence of general market value. There is positive testimony that these shares had no market value. Scurlock testifies that he could not sell the stock; that there was absolutely no market for it, except through some personal friend or the personal influence of a personal friend; and that, in these circumstances, the highest price he got was about $15, and the lowest, $1.80. He says positively that the stock had no market value; that he was unable to sell it, though he had some very good stock salesmen. Holden testifies that, after the execution of the mortgage, in July, 1916, he thinks the stock had no value except as fiat, "by saying we believed it was worth so much intrinsically. As a money-making institution, it had no value." Miller says he knows of one sale of $5,000 at 10 cents on the dollar, but it was made through a personal deal; and that, on the open market, the stock could not be sold today, unless on future prospects; and that they had sold a lot at par on future prospects. He thinks the stock is now worth between 5 and 6 cents on the dollar. There is an abundance of evidence to show why the stock would not be a favorite in the open market. It is so disclosed that the major asset of the corporation,

the patent, was structurally bad; that the defects could be remedied only by an impracticable reconstruction. There was great competition, and all who touched the business lost money, and the incumbrances were heavy, and the corporation never made both ends meet. The trial court based its valuation on the proposition that "the value of this stock is what it sold for in actual sale transactions." We have fully spoken to what these actual transactions were, and, as said, we find in the record no basis for a valuation of 14 cents on the dollar. The only sales that can be said to be indicative of a general market value are stated by Scurlock. He testifies that, when the patent was issued, about March 14, 1914, 460 shares of stock were sold to Stell & Baker at $3.75 the share. He speaks of another sale to Hess & Green, about May 13th, wherein 200 shares were sold at something like $1.80 a share; that they sold a large block of the shares, before the patent was issued, to one Plachek at $5 a share, and also 75 shares to one Jackson at $7 a share. At these times, application for the patent had already been made. The highest price obtained in any sale that can be reasonably claimed to be indicative of value in the open market is $7 the share. We can find no basis in the record for allowing more. It follows that, instead of $71,120, the decree should be reduced to $35,560. Subtracting therefrom the sum allowed below for their share of the expenses incurred by the defendants in developing the invention, or $5,316.34, the award in damages should be $30,243.66. See *Watson v. Coburn,* 35 Neb. 492 (53 N. W. 477); *Doyle v. Burns,* 123 Iowa 488; 3 Elliott on Contracts, Section 2217.

IV. The cross-appeal perfected by the plaintiffs urges that the trial court erred in allowing interest; and we think this is so. Following out what we have already said, the conversion occurred on December 1, 1913. The plaintiffs then had the right to obtain money judgment. That carried with it the right to be paid interest for what was due them, provided only that action was not unduly delayed. It is not claimed that that has been done. The record does not state with exactness when the decree now appealed from was entered, but we gather that it was close to the 10th of March, 1919. This entitles the plaintiffs to interest

5. CORPORATIONS: conversion of stock: interest.

at 6 per cent for 5 years, 3 months, and 10 days, or $9,577.27. See *Doyle v. Burns*, 123 Iowa 488; *Watson v. Coburn*, 35 Neb. 492 (53 N. W. 477). This results that plaintiffs should have a money judgment in $39,820.93, with interest at 6 per cent, beginning with the date of the filing of this opinion. Decree and judgment accordingly will be entered below, or, at the election of plaintiffs, they may have decree and judgment in this court. —*Modified and affirmed.*

All the justices concur.

PRESTON, J. (concurring specially). I concur in the result, but I do not agree with the statement in the opinion as to the law of the case, that:

"In the same cause we cannot change our position in a second appeal, even if we were utterly in error on the first appeal."

The modern rule ought to be, and I think it is, under late cases, that if, in the exceptional case, the court is clearly satisfied that a wrong legal proposition has been announced, it has a right and it is its duty to make the correction, even in the same case, rather than to let the wrong rule stand and be followed until the question is raised again later, and then make the correction by overruling the wrong conclusion in the former case.