E. A. B. NORMAN, Appellee, v. CITY OF SIOUX CITY, Appellant.

**MUNICIPAL CORPORATIONS:** Streets—Crack Between Sidewalk
1 **and Approach.** Negligence may not be predicated on the act of a
city in permitting a crack or slight opening to exist between the
end of a temporary sidewalk and the end of a temporary approach
thereto.

**NEGLIGENCE:** Proximate Cause—Evidence. Evidence held insuf-
2 ficient to show that a crack between a cement sidewalk and the
wooden approach thereto was the proximate cause of an accident.

*Appeal from Woodbury District Court.*—C. C. HAMILTON,
Judge.

FEBRUARY 12, 1924.

REHEARING DENIED MAY 16, 1924.

ACTION for damages for personal injuries resulting from
a defective sidewalk. There was a verdict and judgment for
the plaintiff, and the defendant appeals.—*Reversed.*

*Fred H. Free* and *E. G. Smith,* for appellant.

*Burgess & Gill,* for appellee.

EVANS, J.—The plaintiff averred that, on January 17,
1922, he suffered an accident upon one of the defendant's streets
which caused him to fall, and which resulted in the breaking
of his leg; that such accident occurred at the
1. MUNICIPAL
CORPORATIONS: northwest corner of the intersection of Rebecca
streets: crack
between sidewalk and Palmer Streets in the defendant city; that
and approach. it occurred at a place where a wooden sidewalk
or approach was constructed, to connect with the cement side-
walk on Rebecca Street; that a space of two inches had been left
between the end of the cement sidewalk and the end of the said
wooden approach; that plaintiff's heel caught in such opening
in such a way as to throw him to the sidewalk; that such con-

struction and maintenance of the sidewalk or approach thereto were negligent on the part of the city, and damages are claimed. The defense was a general denial and a plea of contributory negligence. The controlling question, in our judgment, on this appeal is whether the evidence in the record was sufficient to sustain a finding of negligence against the city.

Rebecca Street runs north and south. Palmer Street runs east and west. Prior to the summer of 1921, neither of these streets was paved at this locality, and neither had been brought to permanent grade. Along the west side of Rebecca Street and along the north side of Palmer Street, a cement sidewalk had been laid upon a temporary grade somewhat higher than the established permanent grade. Each sidewalk terminated at the northwest corner of the intersection of the two streets. That is to say, the sidewalk on Rebecca Street did not cross Palmer Street, nor did the sidewalk upon Palmer Street cross Rebecca Street. In the summer of 1921, paving was laid upon Palmer Street up to the west line of its intersection with Rebecca Street. For that purpose, Palmer Street was brought to a permanent grade. This grade was about 18 inches lower than the level of the existing sidewalks on Rebecca and Palmer Streets. In order to connect the south end of the sidewalk on Rebecca Street with the floor of Palmer Street as brought to a permanent grade, a plank approach was constructed on the incline from the south end of the sidewalk to the grade on Palmer Street. This was 6 feet in length and about 3 feet in width. Because of the incline thereon, cleats were nailed across it at proper intervals, to guard against slipping. It is claimed that this approach failed to join flush with the end of the sidewalk by a space of about 2 inches. According to some of the witnesses, this space was filled with dirt; according to others, with ice and snow. It was described by some of the plaintiff's witnesses as being ½ inch wide; by others, as being from 5 to 6 inches wide. This is the defect which is charged as negligence against the city. In order to find a verdict for the plaintiff, the jury must have found that the plaintiff's heel was caught in this opening, and that he was thereby thrown to the ground. The actual circumstances of the accident, as disclosed by the record, are very meager and indef-

inite. The record in that respect consists of the following testimony of the plaintiff, and no more:

"I just walked slow down there, and when I come to this approach, I just got caught there and fell over to the front and to the side. My heel got caught. There must be a crack,—I don't know for sure,—just when I was crossing that wooden sidewalk. I think my heel got caught between the cement sidewalk and the wooden sidewalk. I fell right over to the left side of Palmer Street."

The plaintiff's home abutted on Rebecca Street and on Palmer Street at this corner. He was familiar with the conditions at the place of the accident, and passed over such place daily. The plaintiff as a witness described the defect as follows:

"I do not know how many times I went over the wooden approach. I went quite a few times, however. During this time I saw a little crack in it. I knew from walking over the approach that it did not extend within an inch or two or three of the cement walk, and I knew there was a little crack in it. At the time I fell on this walk, it was about an hour after I had passed over it, coming home. As I came home that evening, I noticed this sleet the first time I went up the incline."

His wife testified that the "crack" was "about two inches." His witness Duckworth, who lived near by, and used this sidewalk, testified:

"If I remember correctly, there was a crack there when the approach was put in. My judgment is that there was an opening of half an inch between the planks and the end of the sidewalk. I could not say that there were places there where it was more than half an inch after it was built. I think there was a crack there ever since it was built."

His witness Hammer, who was his next-door neighbor, testified as follows:

"After December, I traveled over it about twice a day. I did not see any gap in the top between the top of this incline and the walk. I walked over it. If there had been a gap there two or three inches wide and four or five inches deep, I don't know whether I would have seen it or not. I probably would if I looked for it. I did not feel it was loose when I walked on it, but these inch cleats were full of snow half of the time, and

icy, and you take a step on it and you would slip. I think it was dangerous in the wintertime, not because so much it was loose, but because it had snow and ice on it. I do not know whether there was snow and ice on it at the time this man fell.''

Was the condition which was thus described by the plaintiff and his witnesses such a defect in the sidewalk as to constitute a legitimate basis for a charge of negligence? Was it such a defect as the city was bound to discover and repair? The city is not an insurer of pedestrians. It is not bound to maintain perfection in its sidewalks. It is bound to exercise reasonable care to maintain its walks in reasonably safe condition. This is the measure of its duty. Though such duty be fully performed, yet accidents may and will happen to pedestrians, and there will always be a particular cause for every accident. It will not do to assume that every particular cause of an accident to a pedestrian is a defect or fault chargeable to the city. Here was a temporary approach, put in for the temporary convenience of pedestrians, to serve until such time as should be necessary to bring these streets to a permanent grade and to lay permanent sidewalks accordingly. For the city to be charged with negligence for the alleged defect here described, would be to say, in effect, that the city is liable for every imperfection in its sidewalks, if it result in accident.

Taking a view of the evidence most favorable to the plaintiff, we are constrained to hold that the defect complained of was not such as to charge the city with negligence therefor. More-
over, the evidence in proof of proximate cause is quite deficient. It is predicated wholly upon the testimony of plaintiff which we have quoted above:

**2. NEGLIGENCE: proximate cause: evidence.**

''There *must* be a crack,—I don't know for sure. I think my heel got caught between the cement sidewalk and the wooden sidewalk.''

In order that the defect complained of could be the proximate cause of this particular accident, its exact dimension or width became vital. If it was too large, the heel could not have been caught and held by it. If it was too small, the heel could not have entered it. To produce this accident, therefore, it was necessary that the dimensions of the crack and of the heel should be equivalent. It operated against plaintiff's case to

show that the crack was 5 inches wide; and against it also to show that it was only half an inch. No measurement appears to have been made, though the collection of evidence began shortly after the accident and while the approach was still frozen in place. The plaintiff does not testify that his heel did enter the crack, or that it did get caught. He only expressed the opinion that it must have been something of that kind. A finding of fact to that effect, therefore, rests upon circumstantial evidence, and we must take note of the sufficiency of the circumstances to go to the jury. According to plaintiff's witnesses, the place was covered with ice and snow. It was also covered with sleet on that night. There is no explanation of how a 2-inch crack could be exposed to plaintiff's heel under such circumstances. The plaintiff himself was barely able to testify that he had ever seen a crack there at all, and he fixed its dimensions as possibly "*one* inch or two or three." Upon this record, could the jury say that the circumstances proved excluded every other reasonable hypothesis as to the cause of this accident except that the plaintiff's heel was caught in this alleged crack? We are clear that the verdict for the plaintiff upon this evidence could be nothing more than a mere guess or surmise, and was induced by the gravity of the injury, rather than by proof of the proximate cause of it. It is our conclusion, therefore, that the evidence was insufficient to prove either the negligence of the city or that the defect claimed was a proximate cause of the injury. See *Johnson v. City of Ames*, 181 Iowa 65; *Hirst v. City of Missouri Valley*, 193 Iowa 1225.

The judgment is, accordingly, reversed.—*Reversed.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.