E. A. B. NORMAN, Appellee, v. CITY OF SIOUX CITY, Appellant.

**APPEAL AND ERROR: Law of Case—Defect in Street.** A holding on appeal that a certain defect in a public street was not of such nature as to charge the municipality with negligence is the law of the case on retrial on substantially the same evidence. (See Book of Anno., Vol. 1, Sec. 12871, Anno. 56 et seq.)

**Headnote 1:**    4 C. J. p. 1093.

*Appeal from Woodbury District Court.*—ROBERT H. MUNGER, Judge.

DECEMBER 15, 1925.

ACTION for damages for personal injuries resulting from a defective sidewalk. Verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Paul M. Hatfield* and *E. G. Smith,* for appellant.

*Burgess & Gill,* for appellee.

STEVENS, J.—Rebecca Street in Sioux City extends north and south, intersecting with Palmer Street, which extends east and west. The intersection of these streets is not paved. There

is a cement sidewalk on the west side of Rebecca Street, and a cement spur about four feet in length to the east. From the east end of this walk there is a wooden approach, about 6 feet 6 inches long, constructed of three 2x12" planks, resting upon the ground at the ends, and held in place by stakes driven in the ground. The planks were nailed to 4x4's at the top and bottom, with cleats across the top, to assist pedestrians in passing over same. The top cleat extended out from the edge of the planks, for the purpose of making a junction between the sidewalk and the plank. The approach, in some way, became separated, at the upper end, from the cement sidewalk, so as to leave a space or opening, the width of which, according to the testimony of the witnesses, varied from one to perhaps five inches. This was the condition of the walk on January 17, 1922, when appellee, while in the act of passing from the cement walk onto the approach, fell in such a manner as to receive a compound fracture of his left leg. He alleged in his petition that his fall and consequent injuries were caused by reason of the fact that his foot, or the heel of his shoe, became caught in the space between the approach and the cement walk.

The negligence charged was the failure of the city to maintain the walk in a reasonably safe condition for the use of pedestrians. The case was twice tried in the court below, both trials resulting in verdicts for appellee. For our prior decision, see *Norman v. City of Sioux City*, 197 Iowa 1310. No claim is made by appellant that the accident did not occur at the place charged, nor that the injuries complained of were not as shown by appellee's testimony.

Upon the former appeal, we reversed the trial court on two propositions: that is, that the defect complained of was not of such a character as to charge the city with negligence and that it was not shown that the defect, if any, was the proximate cause of the accident.

Appellant moved for a directed verdict, upon the ground that the prior decision of this court is the law of the case, and in all respects binding upon appellee and the court. The motion was overruled. This ruling presents the controlling and decisive question upon this appeal. The case was tried upon an amended and substituted petition, which appellee asserts materially

changed the issues from those formerly tendered. It is also urged by appellee that the evidence upon the last trial is substantially different from that offered upon the previous trial. A profile of the approach, showing appropriate and material measurements, and also a photograph thereof, clearly disclosing the opening between it and the cement sidewalk, were introduced upon both trials. The negligence charged in the original and in the amended and substituted petition is, for all practical purposes, identical. It is true that the latter pleading went into much greater detail in alleging the facts, but the vital part of the two pleadings—that is, the specific facts constituting negligence—is the same. The allegations of collateral facts which in no wise contributed to the result complained of, add nothing to the material allegations of the original petition. In other words, the negligence charged is the same in both pleadings, and necessarily the facts constituting the cause of action alleged could not, under the circumstances of the case, be materially varied. The elevation of the cement sidewalk on the west side of the street, the incline of the approach, the material composing it, the method of its construction, and the manner in which it was placed and used, were fully disclosed by the evidence upon the former trial. Appellee did not fall upon the approach, and no claim is made that the degree of the incline had anything to do with the accident. Appellee had proceeded north on the cement sidewalk to the intersection, and then turned east to Rebecca Street, when, as he claims, his heel or foot caught in the opening described, causing him to fall, in the manner and with the result already noted. Upon the former trial, he testified as follows:

"I walked on the cement sidewalk on the west side of Rebecca Street, going south. It was about 75 feet to where this wooden sidewalk was. I just walked slow down there, and when I come to this approach, I just got caught there, and fell over to the front and to the side. My heel got caught,—there must be a crack,—I don't know for sure,—just when I was crossing that wooden sidewalk. I think my heel got caught between the cement sidewalk and the wooden sidewalk. I fell right over to the left side of Palmer Street. I knew my leg was broken, and I couldn't get up."

Upon the last trial, he testified as follows:

"Q. And as you came to this wooden approach, just tell the jury what happened to you. A. Then I came to this wooden approach. I tried to go over, and I just got caught in the crack, and I couldn't move at all. I fell with my left heel. I was just fast with my heel,—couldn't move,—and I fell to the left side. My left foot was caught right on the left side from that approach in the crack; caught between the cement sidewalk and the wooden approach. My heel was caught. My leg was broken. I crawled home. The doctor was called, and I went to the hospital. * * * I testified at the former trial as follows: 'As I walked along there, my foot got caught,—my heel got caught. Q. In what? A. Well, there must be a crack,—I don't know for sure,—there must be a crack. Q. Do you know whether your heel got caught between the cement sidewalk and the wooden sidewalk? A. Yes, I think for sure I got caught there.'"

It will be noted that the only change in his testimony upon the two trials is that he was somewhat more certain and positive as to the exact cause of the injury, upon the latter. The explanation offered for the change is that appellee is of German nativity, and speaks English badly, and that he made himself better understood upon the last than he did upon the former trial. It is evident that appellee was not misunderstood by the jury upon the former trial, as they returned a verdict in his favor for $3,500. Surely, appellee was in no better position to remember the circumstances of the accident, or to testify more explicitly as to what occurred, upon the latter than upon the former trial. The testimony of the other witnesses is in all material respects the same.

Sam Pickus, who was not a witness upon the previous trial, added little or nothing to the material facts of the case. He testified that:

"There was a crack or open gap between the south end of the cement sidewalk and the north end of the wooden approach, varying in size from an inch and a half to approximately two and a half inches in width, the small end being in the west side. On the east side, the gap was between two and a half and three inches,—no more. I only measured it with my eye."

Charles Hammer, upon the former trial, testified that the opening was two and a half inches, and upon the latter, that it was from two and a half to three inches.

Dr. Duckworth, upon the former trial, estimated the opening to be possibly one-half inch on one side and two and one-half inches on the other. He gave the same estimate upon the present trial, except to add that, at certain places, where the concrete was chipped off, it might be from three to three and one-half inches.

G. Y. Skeels gave no estimate upon the previous trial, but testified below that it was from an inch to two inches.

The testimony of H. M. Rickard, B. C. Hagan, George Norman, and Mrs. E. A. B. Norman was almost identical upon the two trials.

In our former opinion, we said:

"Was the condition which was thus described by the plaintiff and his witnesses such a defect in the sidewalk as to constitute a legitimate basis for a charge of negligence? Was it such a defect as the city was bound to discover and repair? The city is not an insurer of pedestrians. It is not bound to maintain perfection in its sidewalks. It is bound to exercise reasonable care to maintain its walks in reasonably safe condition. This is the measure of its duty. Though such duty be fully performed, yet accidents may and will happen to pedestrians, and there will always be a particular cause for every accident. It will not do to assume that every particular cause of an accident to a pedestrian is a defect or fault chargeable to the city. Here was a temporary approach, put in for the temporary convenience of pedestrians, to serve until such time as should be necessary to bring these streets to a permanent grade and to lay permanent sidewalks accordingly. For the city to be charged with negligence for the alleged defect here described, would be to say, in effect, that the city is liable for every imperfection in its sidewalks, if it result in accident. Taking a view of the evidence most favorable to the plaintiff, we are constrained to hold that the defect complained of was not such as to charge the city with negligence therefor. Moreover, the evidence in proof of proximate cause is quite deficient. It is predicated wholly upon the testimony of plaintiff which we have quoted above."

No change in the physical facts is shown, notwithstanding the slight variation in the testimony of some of the witnesses as to the width of the space or opening. Perhaps the depth was more definitely shown upon the last trial. This change, if any, in the physical facts is not material in any real sense. If the physical facts shown upon the previous trial were not sufficient to charge appellant with negligence, then surely proof of the same facts would not have that effect upon a retrial. The failure of appellee to prove that the defect in the walk was the proximate cause of the injury may have been fully met and overcome on the last trial. If, however, this were conceded, it could not change the result unless negligence was also proven. The method of construction and the use of the approach and its relation to the cement sidewalk could not be changed. The opening could not be made an inch wider or narrower. The condition of the weather and of the walk, as shown upon the former trial, was less favorable to appellee; but this circumstance does not bear upon the question of the city's lack of care in the maintenance of the approach. The former decision is the law of this case, unless such substantial change is shown by the physical facts as to make out the charge of negligence alleged in the petition. No such change is shown. The material facts are the same in both cases. Not only is the former decision the law of the case, but it will not be overruled in the same case. *Barton v. Thompson*, 56 Iowa 571; *Adams County v. B. & M. R. R. Co.*, 55 Iowa 94; *Anthon St. Bank v. Bernard*, 198 Iowa 1345; *Boeck v. Modern Woodmen*, 183 Iowa 211; *Bryan & Co. v. Scurlock*, 190 Iowa 534.

The motion of appellant to direct a verdict should have been sustained, upon the grounds indicated.—*Reversed.*

De Graff, Albert, and Morling, JJ., concur.