PAULINE R. GERINGER, Appellee, v. TOWN OF MARCUS, Appellant.

**MUNICIPAL CORPORATIONS:** Torts—Defects in Streets—Tolerating Non-dangerous Condition. An injured person who establishes that the hole or depression in which she fell, and over which she had repeatedly passed, during many months, *was not dangerous,* is in no position to claim that the city was negligent in knowingly permitting the non-dangerous defect to exist.

Headnote 1: 28 Cyc. p. 1414 (Anno.)

Headnote 1: 13 R. C. L. 339, 398.

*Appeal from Cherokee District Court.*—C. C. BRADLEY, Judge.

FEBRUARY 15, 1927.

Action for personal injuries resulting from a fall on one of defendant's sidewalks. Judgment for plaintiff. Defendant appeals.—*Reversed.*

*L. J. McGivern* and *Healy & Breen*, for appellant.

*T. E. Diamond* and *Walter McCulla*, for appellee.

MORLING, J.—We find it necessary to discuss only the one question whether a case of actionable negligence on the part of the defendant sufficient to go to the jury was made out.

About 10 o'clock P. M., June 27, 1925, plaintiff, as she says, stepped in a hole in a sidewalk within a few steps of her home, fell, and sustained the injuries for which she seeks to recover damages. The precise question is whether the "hole" is shown to have been such that for the defendant to permit its existence with knowledge thereof may be said to be negligence. The plaintiff's testimony is:

"I knew that hole was there, of course, and I had been over it, and knew that hole to be there; but we were talking when we came up to that hole, and I was thinking about something else, I suppose, and I just didn't think about the hole, being in the walk; and when we reached that place, I fell in the hole, or slipped there, and I fell in the hole, and I hit my left knee on the stone cement   *   *   *   When I came along this walk, I thought I had not reached the point of the hole in the walk, before I stepped into it with my left foot. At the time, my right foot was south of the hole. It threw me, of course, and it knocked the side of my knee on the jagged ends of the hole in the walk. The hole was about 2 feet in width, east and west, and about that far north and south [indicating],—about 1½ feet, or something like that. Toward the center of the hole it was about 4 inches deep. It was jagged and very uneven. It was all jagged. The hole came from poor cement work. This hole had been in the walk there before this time for the past few years, that I know of. It was getting deeper. The footing in the hole was not very solid. It was the regular work of cement and sand and gravel. In the hole it was rough. The particles in the hole were not firm.   *   *   *   From the two years we

lived there, there was the hole there, and gradually growing bigger and deeper, and both deeper and bigger. * * * I knew it was there, a large hole there; and it was getting to be a large hole, but I paid no attention to it. * * * It wasn't impossible to go by without seeing it. You could walk through. * * * I mean to say this: that I had full knowledge and information of that hole in the sidewalk for a period of 18 months before I fell. I passed it every time I went down town. I was conscious that it was there, but I never feared it. * * * I went by there in the evening, and I could see it was dangerous to anybody that didn't know it was there. * * * Q. You don't mean to tell us that you so regarded it for a period of 18 months before you fell? A. Yes, I do.''

Plaintiff testified that it was always dark there, and she appreciated that before she fell.

''I couldn't get around it. I would have to walk through it. The sidewalk where I fell was not elevated above the surface of the ground. It was elevated like any ordinary smooth walk. * * * I have walked through that hole many times. * * * I stepped in the hole of the sidewalk, which threw me down, of course, and I struck my knee against what I believe to be the ragged end of the hole in the walk. * * * I don't know whether I put my left foot or right foot in the hole first. I was down on the ground before I knew it. * * * ''

On redirect examination, she testified: 

''Q. Now did you regard this hole as a dangerous place in the walk? * * * A. No, I didn't really regard it as really dangerous. * * * I had walked over it so many times I didn't regard it as dangerous to me, but it might be particularly to anybody strange going through there at night. * * * [On re-cross-examination.] I have walked through it many and many times, many and many is the time. I mean, in other words, that, if I saw that hole there in that walk that night, I would have walked into it anyway, even though I knew it was there, because I have walked through it many other times and never fell.''

On redirect, plaintiff testified:

''Q. Could you see that hole as you looked for it? A. No, sir, I couldn't. I didn't regard it as imprudent to go over that hole that night, because I traveled that so much, walked through it many and many a time. I really didn't regard it as dangerous.

I knew the hole was there. I had been over it many times, and I really didn't think it was dangerous for me to go over it. It might be for a stranger. * * * Q. * * * it was my impression you testified in cross-examination that this hole was a dangerous one * * * A. I wish to correct it. I didn't regard it as a dangerous hole. I don't know as I did anything but walk along a little slower than I had a little further back. I kept my eyes on the walk, but it was so dark I couldn't see the hole. * * * there is loose particles in that hole, and if you step in it, it is apt to make you fall. I never fell in that hole before. I must have stepped on some of those loose particles or whatever it was in there, and it twisted my left limb. I had walked over that place when it was that dark before. * * *"

Plaintiff's witness Hamed testified:

"This was a four-foot cement sidewalk, and the hole reached within 6 or 8 inches of either side of the sidewalk, and the hole was probably 3 inches in depth in its deepest part, although I never measured it. The material in the bottom of the hole was somewhat loose."

Plaintiff's witness Mrs. Green testified:

"I had noticed this hole for more than a year. In general dimensions I would say it was about 20 to 24 inches in diameter, somewhat irregular in shape. * * * My baby cab was 17 or 18 inches wide, and it would go through the hole. I don't know that this hole got any bigger throughout this time, but it became larger in its outer dimensions. The particles in the bottom of the hole were loose, of course. They were sand, concrete, and gravel. * * * it was just a few inches [deep],—not over three or four."

Plaintiff's witness Bork testified:

"In November, 1924, I should judge this hole was from 20 inches to two feet in diameter, and I think it grew a little larger, as time went by. My best judgment is that the hole was about four inches deep at its deepest place. * * * The hole was approximately two feet across and about four inches deep."

Plaintiff's witness Mrs. Dunn testified:

"This hole in the sidewalk was probably two feet north and south, and not quite as wide east and west, and probably two or three inches deep. * * * I never measured the size or the depth of it. The hole was generally crumbling, and there was

sand and dirt and small particles of cement in it. Between the edge of the walk and the hole there was probably five or six inches of sidewalk left. The hole was not straight, but jagged. * * * Sometimes the hole was deeper than at others, because sometimes my children threw dirt in it. * * * The center of the hole was just about in the center of the sidewalk, and there was four or five or six inches of unbroken sidewalk on each side of the hole.''

Plaintiff's witness Barney Dunn testified that some of the top surface of the walk crumbled off.

''I think the hole was at least 3 inches deep, anyway. * * * That hole in the walk wasn't dangerous to me.''

Plaintiff's son, who was with her when she fell, testified, on direct examination, that he had knowledge of the hole for about two years, observed it many times.

''Q. Mr. Diamond: How did you regard this hole yourself, —a dangerous hole, or otherwise? A. No, sir. I knew it was there, but I didn't regard it as dangerous. It wasn't dangerous to me. * * * [On cross-examination.] Q. Why did you think that this hole in this walk that you described here, was not a dangerous place? A. Because I crossed it many times before. By reason of the length and depth of this hole, I never thought it was dangerous.''

Plaintiff's husband, as her witness, testified on direct examination:

''I observed that hole in the sidewalk for two years. It was two feet wide east and west, and 20 inches the other way. It was 3 or 4 inches deep. * * * Q. Mr. Diamond: What do you say as to whether you regard that hole as a dangerous hole? A. No, I wouldn't regard it as a dangerous hole. * * * [Cross-examination.] I never told him it was dangerous, because I never thought it was dangerous. * * * This sidewalk in front of the Dunn property is nearly level with the surrounding natural surface of the ground. It was almost level with the top of the ground.''

Defendant's witness Holm, the mayor, testified:

''That sidewalk as a whole was not a very good one. It was one of those kind of walks where there was a shell on top, of about half an inch: that is, it had been troweled down to a hard shell about half an inch thick, and under that shell the material

was not very good. This hole we have been listening about is where the appearance of it is that it was this shell was broke right over that hole; the shell came off of the walk. I don't think it was quite as much as the witness said it was. I think it was about 18 inches one way, and probably 20 the other. I think they are not very far from right in their testimony as to the size of that patch. To the best of my observation, it was not over 1½ inches deep, and there was sediment and stuff drifting into it. It may have been possibly a little deeper, but I don't think it was ever deeper than 1½ inches, with the sediment in it, and it was sometimes up to the hard shell of the walk, about a half inch thick.''

The testimony of the witnesses ''is not far from being correct. I think it is a little bit overdrawn, but is not materially so.''

The plaintiff testified that she walked through the hole, and would have walked into it anyway, that night. Another witness testified that her baby cab, 17 or 18 inches wide, would go through the hole. The testimony of the mayor, Holm, admitting the testimony of plaintiff's witnesses to be substantially correct, is not contradicted, when he says that the hard shell was about half an inch thick, cracked, and broken. The witnesses say that the hole was deepest about the middle. The case cannot be assumed to be other than the ordinary one of a broken top coat, and wearing away of the softer material underneath, and more deeply toward the center. The plaintiff, having testified that she could see that it was dangerous, and that she had so regarded it for 18 months, was confronted with the possibility of argument foreshadowed on her cross-examination that she was guilty of contributory negligence in voluntarily venturing in the darkness into a known place of danger. She corrected her testimony, to say that she did not regard it as a dangerous hole. The only affirmative evidence on the subject is that offered by plaintiff and her witnesses, to the effect that they did not consider the hole dangerous. In making this proof, plaintiff seized the other horn of the dilemma; for, if plaintiff and her witnesses, with their intimate knowledge of the place, did not regard the defect as dangerous, and she would have walked into it anyway, she is not in a position to urge that the knowledge of the town officials of the condition should impute to the town knowl-

edge that it was dangerous. The same evidence which absolves the plaintiff from the implication of negligence from knowledge must absolve the town from the implication of negligence based upon the knowledge of a defect which all the witnesses say they did not regard as dangerous. *Broburg v. City of Des Moines*, 63 Iowa 523. The municipality is not an insurer against accidents, nor a guarantor of the safety of pedestrians. Its duty is to exercise reasonable care to keep its sidewalks in reasonably safe condition for pedestrians using ordinary care. *Anders v. City of West Union*, 131 Iowa 192; *Johnson v. City of Ames*, 181 Iowa 65. The municipality is not required to exercise a greater degree of care than that exercised by ordinarily prudent persons. Depressions in walks are not uncommon. If the defect is not such as to cause an ordinarily prudent person, knowing of it, to anticipate danger from it, the municipality cannot be said to be negligent from the mere fact that the defect existed and that the municipal officers had knowledge of it. *Johnson v. City of Ames*, 181 Iowa 65; *Geer v. City of Des Moines*, 183 Iowa 837. There is evidence that the cement work was broken, jagged, and uneven, but the degree thereof is not shown. This commonly happens in cement walks. It does not appear that danger from this latter condition ought reasonably to have been anticipated, or that that was the cause of plaintiff's fall. Nor does it appear that the "hole" caused her fall. She at first said, "I fell in the hole, or slipped there, and I fell in the hole and I hit my knee on the stone cement." Again, she says that she stepped in the hole, "which threw me down, of course, and I struck my knee on what I believed to be the ragged end of hole in the walk." Again, she says, "I must have stepped on some of those loose particles, or whatever it was in there, and it twisted my left limb." She is uncertain as to what caused her to fall. She "fell in the hole, or slipped there." Her most definite conclusion is that she "must have stepped on some of those loose particles." The negligence charged in the petition is the existence of a large hole which the officers negligently and carelessly permitted to remain in the walk for a long time, without repairing. We are of the opinion that negligence or injury to plaintiff from the existence of the "hole" is not shown. *Johnson v. City of Ames*, 181 Iowa 65; *Johnson v. City of Ames*, 187 Iowa 60; *Frisk v. City of Des Moines*, 196 Iowa 606; *Hirst v. City of*

*Missouri Valley,* 193 Iowa 1225; *Norman v. City of Sioux City,* 197 Iowa 1310; *Norman v. City of Sioux City,* 200 Iowa 1343. This conclusion renders it unnecessary to discuss the other questions argued.

The judgment is—*Reversed.*

EVANS, C. J., and DE GRAFF and ALBERT, JJ., concur.