JUANITA A. THOMAS, Plaintiff, Appellee, v. FORT MADISON, IOWA, Defendant, Appellant.

No. 44515.

OCTOBER 18, 1938.

J. W. Napier, for appellant.

Johnson, Martin & Johnson, for appellee.

HAMILTON, J.—In concluding its argument, appellant states its position as follows:

"If this was a case that should have gone to the jury, or having gone to a jury which returned a verdict in favor of the plaintiff, the verdict should be sustained, then the city has no complaint about the verdict the jury rendered and is not asking for a new trial, but the defendant urges that it was a case that should not have gone to a jury but that having gone to a jury, judgment should have been rendered for the defendant notwithstanding the verdict."

Two errors are assigned and relied upon for a reversal. First, the court erred in not sustaining the defendant's motion for judgment notwithstanding the verdict in that there was not sufficient evidence of negligence on the part of the city to sustain the verdict and, secondly, the evidence did not show plaintiff's freedom from contributory negligence.

We have carefully read and considered the record and the authorities cited and relied upon by the appellant and find ourselves unable to agree with its contention. As we view the record in the light of the prior pronouncements of this court, a jury question was presented. No element of sufficient proof was lacking on any issue in the case. The facts are these: The accident occurred at the northwest corner of Avenue E and Fourth Street as plaintiff undertook to step from the sidewalk down onto the pavement. Avenue E had been paved before Fourth Street; sometime later, when Fourth Street was paved, in order to obtain proper drainage of surface water, the curb and gutter on Avenue E at this corner were lowered about three inches. In doing this, the walk, which extended from the regular sidewalk at the lot line across the parking or terrace to the curb, was broken loose and this left the jagged or rough end of this cement walk about three inches higher than the top of the curb. In other words, the walk had, originally, been flush with the top of the curb but when the city lowered the curb the walk was not lowered but remained unchanged. This left a ledge or offset of about three inches from the top of the walk down to the top

of the curb. The curb was somewhere from nine to twelve inches high. Hence, one, in stepping from the walk onto the pavement, would have to take this short step of three inches to the top of the curb and then to the pavement or step out over the curb. There was evidence from which the jury could have found and did, in fact, find (special interrogatories were submitted) that after this curb was lowered there was a space between the end of the walk and the curb. There was also evidence that the water had washed the dirt out of this space leaving a gap or crevice. This walk had been left in this unfinished condition ever since the curb had been lowered—more than ten years prior to the accident.

On the night of September 10, 1936, plaintiff was attending a meeting at the home of Mrs. Cresap who lived on the lot adjacent to this street intersection. She left the house about nine o'clock in the evening and started home. Mrs. Cresap accompanied her out onto the porch, which was some twenty feet from the crossing, and stood there watching plaintiff to see that she got safely across the street. Plaintiff testified that she walked slowly as anyone would leaving a home; as she came to the point where the sidewalk connects with the curb she stepped from the sidewalk to the pavement, "as she supposed", and caught the heel of her shoe in the walk and fell.

"Q. What caused you to fall? A. Why, it was catching my heel."

She had on what she described as "a pair of Dr. Scholl's arch preserver shoes with leather heels tipped with rubber; that the heels were about an inch and one-half high." The heel was about two inches square and comparatively flat. Mrs. Cresap saw plaintiff fall and called to her and asked if she was hurt and assisted her across the street to her home. There was a street light in the center of the intersection; likewise, the porch light was burning.

Mrs. Cresap was asked:

"Q. State whether or not the light from the electric light is sufficient to make the step-off, about which you testified, readily apparent? A. If you are familiar with it, it would. A stranger in stepping from the walk ordinarily, as you do, down, you would miss that very easily, that step-off. * * * The light would hardly be as light as day."

Concerning the crevice between the end of the walk and the curb, plaintiff testified:

"That is where I fell; that caused me to fall.

"Q. About how wide was that space? A. Wide enough to catch my heel. * * *

"Q. State whether or not with the assistance of these lights it was possible for you to see the offset in the sidewalk as you approached it? A. It might have been if you were going up to the street, but going down the street it wouldn't be noticeable."

The witness evidently meant to say the light might be sufficient if the offset were approached from the pavement. She said she was walking slowly and proceeding carefully; that she was wearing bifocal glasses at the time; that she had never been over the walk before. Mrs. Cresap further stated that "there was a path as you go from the north toward the street to the left of the sidewalk and one to the right; that we never used the sidewalk, almost everyone familiar with it walked around it; it wasn't safe to step up or down; there was a worn path on either side." One or two of the witnesses testified to substantially the same thing concerning the unsafe condition and to the path worn at either side. There was some variance in the testimony but there was ample evidence to take the case to the jury and the jury was in a better position to weigh the evidence and glean the truth than we can possibly be, especially, since they were permitted to view the premises.

The law governing matters of this kind is quite well settled in this state. The only difficulty arising is in making application of the legal principles to the particular facts. Appellant relies upon the cases of Abraham v. City of Sioux City, 218 Iowa 1068, 250 N. W. 461; Geringer v. Town of Marcus, 203 Iowa 41, 212 N. W. 365; Johnson v. City of Ames, 181 Iowa 65, 162 N. W. 858; Norman v. City of Sioux City, 197 Iowa 1310, 197 N. W. 18, and Norman v. City of Sioux City, 200 Iowa 1343, 206 N. W. 112. But a careful reading of these cases will disclose fact situations distinguishable from the case at bar. It would serve no useful purpose to again analyze these cases and point out the distinguishing features. Cases more nearly parallel, as we view the record, are Patterson v. City of Council Bluffs, 91 Iowa 732, 59 N. W. 63; Baxter v. City of Cedar Rapids, 103 Iowa

599, 72 N. W. 790; City of Key West v. Baldwin, 69 Fla. 136, 67 So. 808; Bieber v. City of St. Paul, 87 Minn. 35, 91 N. W. 20. These last two cases were referred to by the court in its analysis of the case of Johnson v. City of Ames, supra. The law is well stated by Justice Anderson in the case of Abraham v. City of Sioux City, supra, in the following language [page 1070 of 218 Iowa, page 462 of 250 N. W.] :

"Section 5945 of the 1931 Code imposes the duty upon a city to care for, supervise, and control all public highways and streets within the city and to keep them open and in repair and free from nuisances. This statute requires the city to exercise reasonable and ordinary care to maintain its streets in a safe condition for travel in the usual and ordinary modes of travel. However, a city is not required to keep its streets in a condition of absolute safety. It is only required to use ordinary and reasonable care to that end. It does not insure the safety of travelers upon its streets, nor is it required to foresee and provide against every possible accident. It must have actual notice of the dangerous condition of a street or the condition must have existed for a sufficient time to enable the city to discover and repair the same, in the exercise of reasonable and ordinary care and diligence. Cason v. City of Ottumwa, 102 Iowa 99, 71 N. W. 192; Wheeler v. Fort Dodge, 131 Iowa 566, 108 N. W. 1057; 9 L. R. A. (N. S.) 146; Kiple v. Town of Clermont, 188 Iowa 248, 174 N. W. 251; Krska v. Town of Pocahontas, 200 Iowa 594, 203 N. W. 39."

However, as heretofore stated, the facts in the Abraham case are distinguishable from the case at bar. In the case of Baxter v. City of Cedar Rapids, supra, plaintiff caught her foot on an obstruction in the way of one of the planks at a street crossing projecting from $1\frac{1}{2}$ to $3\frac{1}{2}$ inches above the walk. The defendant requested an instruction that:

" 'If the crosswalk was only raised about two inches above the sidewalk, to which it was an approach, then the crosswalk was reasonably safe.  * * * A simple rise of two inches from a sidewalk to a crosswalk would not be such an obstruction that you could find that it was not in a reasonably safe condition.'

"In holding that the instruction was rightly refused, we said, speaking through Robinson, J.:

" 'Whether an obstruction· or other defect in a walk is of a character to make the municipality which permits it to exist responsible for it, does not necessarily depend upon the size of the defect, but upon the effects which may reasonably be apprehended from it upon persons who use the walk in a proper manner. These will vary with the circumstances of different cases, and whether the municipality is liable for a defect in its streets or walks will, as a rule, be a question of fact, to be determined by the jury under the instruction of the court, and not a mere question of law, to be determined by the court alone. * * * ' '' Johnson v. City of Ames, supra, 181 Iowa 65, 73, 162 N. W. 858, 860.

In the case of Patterson v. City of Council Bluffs, supra, the facts are these: At the point where a new brick walk joined an old plank walk there was a perpendicular offset of nearly four inches and with reference thereto the court said:

"That such an offset is more or less dangerous is amply demonstrated by the accident to the plaintiff. Whether such an offset is so dangerous as that to permit it is negligence depends upon the surrounding circumstances, such as the proximity of lights, the amount of travel, and the like. We think it was for the jury to determine, in the light of the circumstances, whether the city was negligent in permitting this offset, * * * "

Another quite comprehensive statement of the law is quoted from the case of Beltz v. City of Yonkers, 148 N. Y. 67, 42 N. E. 401, in Johnson v. City of Ames, supra, 181 Iowa 65, 71, 162 N. W. 858, 859, as follows:

" 'There are very few, if any, streets or highways that are or can be kept so absolutely safe and perfect as to preclude the possibility of accidents, and whether, in any case, the municipality has done its duty must be determined by the situation, and what men knew about it before, and not after, an accident. When the defect is of such a character that reasonable and prudent men may reasonably differ as to whether an accident could or should have been reasonably anticipated from its existence or not, then the case is generally one for the jury; but when, as in this case, the defect is so slight that no careful or prudent man would reasonably anticipate any danger from its existence, but still an accident happens which could have been guarded against by the

exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law. Assuming that the defendant's officers were men of reasonable prudence and judgment, could they, in the reasonable exercise of these qualities, have anticipated this accident, or a similar one, from the existence of this depression in the walk? They could undoubtedly have repaired it at very little expense, but the omission to do so does not show or tend to show that they were negligent, unless the defect was of such a character that a reasonably prudent man should anticipate some danger to travelers on the walk if not repaired. If the existence of such a defect is to be deemed evidence of negligence on the part of a city, then there is scarcely any street in any city that is reasonably safe, within the rule, and when accidents occur, the municipality must be treated, practically, as an insurer against accidents in its streets. The law does not prescribe a measure of duty so impossible of fulfillment, or a rule of liability so unjust and severe. It imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. But when an accident happens by reason of some slight defect, from which danger was not reasonably to be anticipated, and which, according to common experience, was not likely to happen, it is not chargeable with negligence.' "

With these principles of law in mind, when we consider the circumstances surrounding the accident which caused the plaintiff's injury,—the fact that she was a stranger in this part of the city and had never traversed this walk before; that it was in the nighttime; that it was in a thickly populated part of the city where there was a great deal of travel over this crossing; that it was considered unsafe by pedestrians in the neighborhood, so much so that beaten paths were formed on each side in avoidance of the danger incident to the use of the walk in its defective condition; that this condition was created by the city and never remedied over a period of more than ten years; that there was a crevice sufficient to catch the heel of a shoe and which, under the undisputed evidence, was the cause of plaintiff's fall; that this step-off was not made in accordance with any formulated plan of the city in improving its streets; that plaintiff was walking slowly and carefully at the time—, we are con-

strained to hold with the trial court that on the questions raised by this appeal the matters were for the determination of the jury and the case, therefore, must be and is affirmed.—Affirmed.

SAGER, C. J., and MITCHELL, ANDERSON, STIGER, and DONEGAN, JJ., concur.